In re Dawn J. CHAUSSEE, Debtor.

B–Real, LLC, Appellant,

v.

Dawn J. Chaussee, Appellee.

BAP No. WW–08–1114–PaJuKa.
Bankruptcy No. 07–11392–KAO.
Adversary No. 07–01266–KAO.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Oct. 17, 2008.

Filed Dec. 18, 2008.

Linh K. Tran, Seattle, WA, for B–Real, LLC.

Jay S. Jump, Kent, WA, for Dawn J. Chaussee.

Before: PAPPAS, JURY and KAUFMAN,[1] Bankruptcy Judges.

## OPINION

PAPPAS, Bankruptcy Judge.

## I. INTRODUCTION

In this appeal, the Panel is called upon to decide an issue of first impression in our circuit: whether the act of filing a proof of claim in a bankruptcy case may, alone, subject the claimant to liability for violation of state and federal fair debt collection laws.

The appellee, chapter 13[2] debtor Dawn Chaussee ("Debtor"), commenced an adversary proceeding alleging that appellant B–Real, LLC ("B–Real") violated the Washington Consumer Protection Act, Wash. Rev.Code § 19.86, *et seq.* (West 2008) ("CPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1601, *et seq.* (2008) ("FDCPA") by filing two proofs of claim in Debtor's bankruptcy case for debts Debtor maintains she did not owe and were time-barred under state law. B–Real appeals the bankruptcy court's order denying its motion to dismiss Debtor's complaint for failure to state a claim under Civil Rule 12(b)(6), incorporated by Rule 7012.

Based upon the Ninth Circuit's decisions in *MSR Exploration, Ltd. v. Meridian Oil, Inc.,* 74 F.3d 910 (9th Cir.1996) and *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502 (9th Cir.2002), we conclude that the Code (1) preempts Debtor's state law CPA claim against B–Real, and (2) precludes her FDCPA claim. We therefore REVERSE the bankruptcy court's denial of B–Real's motion to dismiss and REMAND to the bankruptcy court for entry of an order dismissing Debtor's complaint.

## II. FACTS

Debtor filed a chapter 13 petition and plan on March 29, 2007. Her five-year

---

1. The Honorable Victoria S. Kaufman, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all Code, chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037. "Civil Rule" refers to the Federal Rules of Civil Procedure 1–86.

debt repayment plan proposed a six percent distribution to the holders of allowed unsecured claims.

NCO Portfolio Management, Inc., a collection agency, assigned two claims to B–Real: a Citibank credit card account in the amount of $5,269.05, and a Sears credit card account in the amount of $843.74. Both accounts were listed in the name of "Dawn Gonzales" and referenced a partial social security number of "XXX–XX–8514." B–Real maintains that it confirmed through the postal service and an internet web site [3] that Debtor was also known as Dawn Gonzales. In addition, the last four digits of Debtor's social security number match those on the assigned accounts.

In July 2007, B–Real filed two unsecured proofs of claim in Debtor's bankruptcy case based upon the assigned accounts. The claims listed Dawn Gonzales as debtor/obligee and included no documentation for the claims other than an account summary listing the balances alleged to be due and referring to the last four digits of Debtor's social security number.

On September 17, 2007, Debtor filed an adversary proceeding complaint against B–Real, alleging it violated the CPA and FDCPA by filing the two proofs of claim when the debts were barred by the statute of limitations. She further alleged that B–Real's claims indicated that the account-debtor was "Dawn Gonzales," and that by filing the claims in her bankruptcy case, B–Real was attempting to collect debts she did not owe.

On October 8, 2007, B–Real moved to dismiss Debtor's complaint under Civil Rule 12(b)(6) contending that Debtor failed to state a claim for relief under the CPA or FDCPA because neither statute applied to the filing of proofs of claim in a bankruptcy case. B–Real further argued that the CPA was preempted by the Code's claims process. B–Real maintained that Debtor's exclusive remedy for disputing the validity of its proofs of claim in the bankruptcy case was to object to them.[4]

On November 16, 2007, as B–Real had suggested in its motion, Debtor objected to the allowance of B–Real's claims under § 502(b)(1).[5] She alleged that the debts upon which the claims were based were not owed or, alternatively, were barred by the applicable state statutes of limitation. B–Real did not respond to this objection, and an order was entered by the bankruptcy court on December 18, 2007, sustaining

---

3. B–Real alleges it relied upon information in Accurint, an internet database that uses public records and non-public information and provides fraud detection and identity solutions for the public and private sectors.

4. On October 4, 2007, B–Real had filed an answer to Debtor's complaint denying its allegations and asserting defenses, including that the complaint failed to state a claim upon which relief could be granted. B–Real also asserted a counterclaim against Debtor and her counsel seeking to recover its attorney's fees and costs for their alleged violation of Rule 9011 and FDCPA § 1692k(a)(3). Of course, B–Real's request for sanctions under Rule 9011 is procedurally deficient as that Rule requires such a motion be made separately from other motions or requests for relief. *See* Rule 9011(c)(1)(A); *Miller v. Cardinale (In re DeVille)*, 280 B.R. 483, 493 (9th Cir. BAP 2002). FDCPA § 1692k(a)(3) provides in relevant part: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

5. Section 502(b)(1) requires the bankruptcy court to disallow any claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured...."

the objection and disallowing B–Real's claims.

On March 5, 2008, the bankruptcy court conducted a hearing concerning B–Real's motion to dismiss Debtor's complaint. After further briefing from both parties, the court entered a Memorandum Decision on March 26, 2008, denying B–Real's motion in its entirety. The court concluded that Debtor had sufficiently pled claims against B–Real under both the CPA and FDCPA. The court distinguished the Ninth Circuit's decisions upon which B–Real relied and held that the Code neither preempted Debtor's state law CPA claim, nor precluded Debtor's FDCPA claim against B–Real.

An order denying B–Real's motion was entered on April 11, 2008. B–Real timely filed a notice of appeal and a request for leave to appeal the bankruptcy court's interlocutory order, which the Panel granted on July 6, 2008.

### III. JURISDICTION

The bankruptcy court had jurisdiction over this action pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(A) and (B). We have appellate jurisdiction under 28 U.S.C. § 158(a)(3) and (b).

### IV. ISSUES

A. Whether the Code preempts Debtor's state law CPA claim.

B. Whether the Code precludes Debtor's federal FDCPA claim.

### V. STANDARDS OF REVIEW

"A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. All allegations of material fact in the com-

plaint are taken as true and construed in the light most favorable to the plaintiff." *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 937 (9th Cir.2008) (quoting *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir.2007)); *Naert v. Daff (In re Wash. Trust Deed Serv. Corp.)*, 224 B.R. 109, 112 (9th Cir. BAP 1998).

██ Whether state law is preempted by the Code is a question of law we also review de novo. *MSR Exploration*, 74 F.3d at 912.

██ We review issues of statutory construction and conclusions of law de novo. *Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799, 802 (9th Cir. BAP 2007). De novo review requires that we consider a matter anew, as if it had not been heard before, and as if no decision had been previously rendered. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir.1988).

### VI. DISCUSSION

#### A. The CPA Claim

While it was the second claim for relief against B–Real in Debtor's complaint, we first dispose of Debtor's state law claim against B–Real under the CPA because the outcome is so clearly compelled.

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" in Washington. CPA § 19.86.020. Debtor's complaint alleges that B–Real violated the CPA by filing a proof of claim in the bankruptcy court based on a debt that she did not owe or that was time-barred. In analyzing Debtor's claim, we assume these allegations are true.[6] Debtor's complaint did not specify

---

**6.** Our concurring colleague suggests that B–Real's filing of the proofs of claim in Debtor's bankruptcy case cannot constitute "trade or commerce" for purposes of the CPA. Because we conclude the CPA is preempted by the

which provisions of the CPA she alleges that B–Real had violated. For the alleged violation, Debtor seeks to recover treble damages and attorney's fees and costs from B–Real pursuant to CPA 19.86.090.[7]

■ B–Real contends that the bankruptcy court erred when it refused to dismiss Debtor's claim and decided that the Code did not preempt the CPA under these facts. We agree.

■ The preemption doctrine has its roots in the Supremacy Clause of the United States Constitution [8] and is implicated only when there is a conflict between federal and state regulations. *MSR Exploration,* 74 F.3d at 913. Under this doctrine, state laws interfering with, or contrary to, federal law are preempted. *See Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Our task in resolving the preemption issue here is to determine whether the CPA, as a state regulation, is consistent with the structure, purpose, and operation of the Code as a whole. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992). We conclude it is not.

The Ninth Circuit and this Panel have previously addressed whether the Code preempts state law substantive claims and remedies stemming from alleged misconduct by parties occurring in bankruptcy cases. *Miles v. Okun (In re Miles),* 430 F.3d 1083 (9th Cir.2005); *MSR Exploration,* 74 F.3d 910; *Bassett v. Am. Gen. Fin., Inc. (In re Bassett),* 255 B.R. 747 (9th Cir. BAP 2000), *rev'd on other grounds,* 285 F.3d 882 (9th Cir.2002).

In *MSR Exploration,* creditors filed proofs of claim in the debtor's chapter 11 bankruptcy case. The debtor objected to the claims, which were disallowed by the bankruptcy court. The debtor did not pursue sanctions, attorney's fees, or any other remedy in the bankruptcy court. Instead, after the debtor's reorganization plan was confirmed and substantially consummated, it sued the creditors for malicious prosecution in federal district court. *MSR Exploration,* 74 F.3d at 912. The district court dismissed the action and the Ninth Circuit affirmed, holding that the debtor's state law malicious prosecution claim against the creditors was completely preempted by the structure and purpose of the Code.

The court of appeals offered several justifications for its conclusion. First, it reasoned that in adopting 28 U.S.C. § 1334, which grants the federal district courts exclusive jurisdiction over bankruptcy matters, Congress intended to completely preempt state law malicious prosecution actions against creditors. *Id.* at 913–14.

---

Code under these circumstances, we decline to explore this question.

7. **§ 19.86.090. Civil action for damages—Treble damages authorized—Action by governmental entities**
Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in the superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages sustained. . . .

8. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; . . ." U.S. CONST., Art. VI, cl. 2.

Next, the court pointed to the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code" as evidence that Congress had created a "whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and ... debtors alike." *Id.* at 914. The court observed that if state law claims targeting conduct by parties in bankruptcy cases were allowed, the opportunities for asserting them would "only be limited by the fertility of the pleader's mind and the laws of the state in which the [bankruptcy] proceeding took place." *Id.* To the court, this "underscore[d] the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions." *Id.*

The Ninth Circuit next highlighted the need for uniformity in bankruptcy law as a factor militating against allowing the assertion of state law claims against actors in bankruptcy cases. *Id.* In the court's view, the numerous remedies provided in the Code and Rules designed to prevent the misuse of the bankruptcy process suggested that "Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *Id.* at 915.

Finally, the court observed that it had previously recognized the need for preemption of state law claims in the area of bankruptcy law. *Id.* (citing *Gonzales v. Parks,* 830 F.2d 1033 (9th Cir.1987)). In *Gonzales,* the court rejected a creditor's contention that a debtor's filing of a bankruptcy petition allegedly in bad faith could support an action for abuse of process under state law. The court was concerned that the threat of later state litigation may

well deter debtors and creditors alike from participating in bankruptcy cases, and that deterring inappropriate conduct in those cases is "a matter solely within the hands of the federal courts." *Id.* at 916.

Four years later, relying upon *MSR Exploration,* this Panel affirmed a bankruptcy court's dismissal of a debtor's claims for relief against a creditor under the CPA, the very statute Debtor invokes here. *In re Bassett,* 255 B.R. 747.[9] In *Bassett,* the debtor sued a creditor for accepting payments from the debtor under an allegedly unenforceable reaffirmation agreement. In holding that the debtor's claim against the creditor under the CPA must be dismissed, the Panel reiterated that "Congress established its own remedies for abuse of the bankruptcy process, and that Congress intended those remedies to occupy the field," *Id.* at 758–59, and held that "the federal statutory scheme entailed in the Bankruptcy Code is so pervasive with respect to the regulation of reaffirmation agreements that Congress intended to occupy the field to the exclusion of state law." *Id.* at 759.

The Ninth Circuit later confirmed the vitality of the MSR *Exploration* rationale in *Miles,* 430 F.3d 1083. In that case, creditors had filed ten involuntary bankruptcy petitions against the alleged debtor. Following dismissal of the petitions by the bankruptcy court, the debtor's wife and daughter filed actions in state court against the petitioning creditors and their attorneys, alleging various state law causes of action. The actions were removed to bankruptcy court, where they were dismissed on the ground that the Code did not provide for third-party damages. We affirmed. *Miles v. Okun (In re Miles),*

---

9. The debtor also asserted state law claims for unjust enrichment and constructive trust, which were also dismissed. *Id.* at 758.

294 B.R. 756 (9th Cir. BAP 2003), *aff'd* 430 F.3d 1083 (9th Cir.2005).

On appeal to the Ninth Circuit, the court of appeals framed the issue as whether, in enacting § 303(i),[10] Congress had provided an exclusive remedy for recovery of damages by an alleged debtor from the creditor resulting from a dismissed involuntary bankruptcy petition. The court acknowledged that, while the Code and legislative history were silent on the issue, the reasoning in *MSR Exploration* compelled it to conclude that § 303(i) was indeed an exclusive remedy for recovery of damages flowing from an involuntary petition filed in bad faith. *Miles,* 430 F.3d at 1089–1091. In its holding, the court noted that "[w]e do not hold all state actions related to bankruptcy proceedings are subject to the complete preemption doctrine," but that " '[r]emedies and sanctions for improper behavior and filings in bankruptcy court ... are matters on which the Bankruptcy Code is far from silent and on which uniform rules are particularly important.' " *Id.* at 1092 (quoting *Koffman v. Osteoimplant Tech., Inc.,* 182 B.R. 115, 124 (D.Md.1995)).

In sum, while *Miles* suggests that not all state claims "related to bankruptcy" may be preempted by the Code, in these decisions the Ninth Circuit and this Panel have steadfastly held that the Code preempts substantive state law claims and remedies for alleged misconduct that occurs in connection with a bankruptcy case. And although not precisely on all fours, the holdings of *MSR Exploration, Bassett,* and

*Miles* provide clear guidance that we should reject Debtor's CPA claim in this case.

The bankruptcy court attempted to distinguish MSR *Exploration* because, unlike the facts involved in that decision, B–Real had not shown that Debtor was indebted on the assigned accounts, and so B–Real had no right to invoke the protection of the laws governing bankruptcy cases because it was asserting claims against the wrong debtor. The court observed that the bankruptcy laws do not generally apply to parties who have no relationship to the debtor or the debtor's assets. It was also the bankruptcy court's view that Debtor's claim against B–Real did not present any obstacle to the administration and objectives of her bankruptcy proceeding. We respectfully disagree with this analysis.[11]

■ The bankruptcy court's view that, under these facts, B–Real was not a "creditor" puts considerable strain on the Code's definition of that term, as well as on the meaning the Code assigns to the term "claim." Under § 101(10)(A), "creditor" means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." § 101(10)(A). The Code in turn defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). Obviously, Congress intended that the term "claim" be construed in its broadest sense,

---

**10.** Section 303(i) allows the bankruptcy court, under appropriate circumstances, to award costs, attorney's fees and damages to an alleged debtor against a petitioning creditor when the court dismisses an involuntary petition.

**11.** Debtor alleged in the complaint that she did not list debts owing to the subject credi-

tors bearing the account numbers in the proofs of claim in her bankruptcy schedules. She also alleged that the proofs of claim show the account-debtor to be "Dawn Gonzales." But, to be precise, Debtor's complaint did not allege that she was not the "Dawn Gonzales" nor that she did not incur the debts.

and expressly provided that the holder of a disputed claim against the debtor is, nonetheless, to be treated as a creditor in a bankruptcy case. *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("Congress intended ... to adopt the broadest available definition of 'claim'."); *In re Knight,* 55 F.3d 231, 234 (7th Cir.1995) ("a disputed claim is nevertheless a claim" and its holder a creditor); *Korte v. United States (In re Korte),* 262 B.R. 464, 471 (8th Cir. BAP 2001) (holder of a disputed claim is a creditor). The bankruptcy court's conclusion that B–Real was not a "creditor" places an undue limitation on these deliberately broad definitions.

Moreover, the bankruptcy court's attempt to distinguish MSR *Exploration* on its facts is unpersuasive. That the holding in *MSR Exploration* applies in this case was demonstrated by this Panel in *Bassett,* and the Ninth Circuit's later decision in *Miles.* In *MSR Exploration,* as here, the alleged wrongful conduct arose in connection with the bankruptcy claims process; however, the cause of action asserted by the debtor against the purported creditors was for malicious prosecution. *MSR Exploration,* 74 F.3d 910. In *Bassett,* the alleged wrongful conduct was based upon a defective reaffirmation agreement, and the debtor's claim against the creditor was founded upon the CPA. 255 B.R. at 758. And in *Miles,* the wrongful conduct targeted the creditors' alleged bad faith filing of an involuntary petition under § 303, a statute which provides express remedies in the event the bankruptcy court determines that the petition was wrongfully filed and dismissed. The causes of action asserted by the alleged debtor against the creditors, however, were all premised upon state law for negligence, defamation, false light, abuse of process, intentional and negligent infliction of emotional distress, and negligent misrepresentation. 430 F.3d at 1086.

In each of these cases, the factual predicate for the state law claim hinged upon the alleged wrongful conduct of a party in a bankruptcy case. Indeed, the prebankruptcy relationship of the parties as debtor and creditor was of no discernable import to the courts in reaching their decisions. As in those cases, here the factual foundation of Debtor's allegations is, solely, that in filing of proofs of claim in the bankruptcy court, B–Real violated the state consumer protection laws. Because B–Real's conduct occurred in a bankruptcy case, we disagree with the bankruptcy court's conclusion that the facts of this case are distinguishable from those in the case law.

As in *MSR Exploration, Miles,* and *Bassett,* we conclude that the Code, and the Rules implementing its terms, provide the exclusive remedies should the bankruptcy court eventually find B–Real's conduct in Debtor's bankruptcy case to have been wrongful. The statutory analysis and policy considerations espoused in those decisions apply with equal force here.

Only creditors filing proofs of claim were to receive distributions in this bankruptcy case. Rule 3002(a) (providing that, with exceptions not applicable here, an "unsecured creditor ... *must* file a proof of claim ... for the claim ... to be allowed"). In a very pragmatic sense, then, the act of filing a claim constitutes the foundation for creditor participation in this case. Allowing debtors to recover under the CPA solely because a creditor filed a proof of claim may skew the incentive structure of the Code and its remedial scheme and could discourage creditors from filing a claim. *See MSR Exploration,* 74 F.3d at 916 (noting that "[e]ven the mere possibility of being sued in tort ... could in some instances deter persons

from exercising their rights in bankruptcy.").

In addition, permitting prosecution of a CPA action for statutory damages, attorney's fees, and costs might encourage debtors to dispense with the claim objection process in favor of an adversary proceeding, needlessly casting all concerned into costly litigation. *See Williams v. Asset Acceptance, LLC (In re Williams)*, 392 B.R. 882, 887 (Bankr.M.D.Fla.2008). In our view, granting a debtor access to the remedies under the CPA could present an obstacle to the accomplishment and execution of the purposes and objectives of Congress in its intricate design of the claims process in the bankruptcy court.

Bankruptcy courts require full control of the remedies available for addressing improprieties occurring in the cases on their dockets. As the Panel explained in *Miles,* "[t]he risk of subverting the bankruptcy process also warrants the conclusion that the bankruptcy courts must have control over remedies for the improper filing of bankruptcy petitions[.]" 294 B.R. at 761. That same rationale is applicable to the remedies for the improper filing of a proof of claim.

■ Finally, "the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of the parties before the bankruptcy court in the hands of the federal courts alone." *MSR Exploration,* 74 F.3d at 915. The claims procedure set forth in the Code and Rules provides debtors with the opportunity to object to improper or unenforceable claims. If a claim is unenforceable against the debtor, it can be promptly disallowed under § 502(b)(1), just as occurred in this case. Rule 3007 (prescribing the process for objecting to proofs of claim). Further, the availability of sanctions for the filing of

an improper claim in a bankruptcy proceeding, whether through the use of Rule 9011 or § 105(a), reflects Congress's intent that the law relating to bad faith and willful misconduct in bankruptcy proceedings be developed case-by-case in the context of the federal bankruptcy law, not by application of state law.

Consistent with the teachings of our circuit's case law, we fear that the purposes and policies of the Code, together with the need for its uniform application, may be undercut if debtors can pursue state law claims under the CPA against those accused of filing an improper proof of claim. *MSR Exploration,* 74 F.3d at 914 (observing that "[i]t is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process."). We therefore hold that, because Debtor's state law claim against B–Real under the CPA is preempted by the Code, Debtor's complaint failed to state a claim against B–Real upon which relief could be granted. As a result, the bankruptcy court erred when it did not dismiss that claim.

### B. The FDCPA Claim

■ In the complaint, Debtor's first claim for relief alleges that, in filing the proofs of claim in her bankruptcy case, B–Real violated FDCPA § 1692f, which prohibits a debt collector from using unfair or unconscionable means to collect, or attempt to collect, any debt. While Debtor's complaint did not specify which of the various subsections of FDCPA § 1692f B–Real violated, the bankruptcy court decided that the statutory restriction most likely implicated was FDCPA § 1692f(1), which prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." FDCPA

§ 1692f. For this violation, Debtor sought to recover from B–Real her actual damages, statutory damages in an amount up to $1,000, and attorney's fees and costs. FDCPA § 1692k(a)(1)-(3).

In refusing to dismiss Debtor's claim, B–Real contends the bankruptcy court erred in two respects. First, relying on the Ninth Circuit's decision in *Walls*, B–Real argues that the Code and Rules preclude application of the FDCPA in the context of the bankruptcy claims process. Second, B–Real contends that the filing of a proof of claim in a bankruptcy case is not an attempt to collect a debt against the debtor and, therefore, cannot be a violation of the FDCPA. For both reasons, B–Real urges the Panel to hold that the filing of a proof of claim cannot, as a matter of law, violate FDCPA. We hold that the Ninth Circuit's decision in *Walls* controls the outcome here, and that the Code precludes the application of the FDCPA under these facts.[12]

In *Walls*, a chapter 7 debtor continued to make payments to the creditor holding the mortgage on her house after receiving a discharge in her bankruptcy case to enable her to keep the home under the so-called "ride-through" doctrine. *Walls*, 276 F.3d at 505 (citing *In re Parker*, 139 F.3d 668, 672–73 (9th Cir.1998)). When the debtor later stopped making payments, the creditor foreclosed. The debtor responded by commencing a class action in federal district court on behalf of chapter 7 debtors to recover damages, alleging, among other theories, that the creditor had violat-

ed FDCPA in attempting to collect a debt after it had been discharged in the debtor's bankruptcy case.[13] The district court dismissed this claim, and the debtor appealed. On appeal, the Ninth Circuit affirmed the dismissal, deciding that the debtor's FDCPA claim based upon the creditor's alleged violation of the § 524 discharge was precluded by the Code.

The court began its analysis by noting that "[t]here is no escaping that Wall's FDCPA claim is based on an alleged violation of § 524." *Id.* at 510. Therefore, the court explained, in order to adjudicate the debtor's FDCPA claim, the district court would have been required to engage in a series of "bankruptcy-laden" determinations: whether the debtor's payments to the creditor had been voluntary under § 524(f); whether the creditor was required to enter into a reaffirmation agreement with the debtor pursuant to § 524(c) in order to accept the payments; and whether the so-called "ride-through" precluded the creditor from engaging in foreclosing. *Id.* These bankruptcy issues were, according to the court, unrelated to FDCPA. In light of this, the court reasoned:

> The Bankruptcy Code provides its own remedy for violating § 524, civil contempt under § 105. To permit a simultaneous claim under the FDCPA would allow through the back door what Walls cannot accomplish through the front door—a private right of action. This would circumvent the remedial scheme of the Code under which Congress

---

**12.** Again, in reaching our decision, and unlike our colleague, we assume, but decline to decide, that filing a proof of claim in a bankruptcy case can, alone, constitute a FDCPA violation.

**13.** The debtor also alleged that the Code's discharge provisions, coupled with the powers granted to the court under § 105(a) to

implement the Code and prevent an abuse of process, created a private right of action in favor of debtors against collecting creditors. The district court disagreed, holding that the debtor's remedy was limited to asking the bankruptcy court to find the creditor in contempt. On appeal, the Ninth Circuit affirmed. *Walls*, 276 F.3d at 506–10.

struck a balance between the interests of debtors and creditors by permitting (and limiting) debtor's remedies for violating the discharge injunction to contempt. "[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code ... demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all the rights and duties of creditors and embarrassed debtors alike." *MSR Exploration*, 74 F.3d at 914.... Nothing in either Act persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA. While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code. *See Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

*Walls*, 276 F.3d at 510.

In its decision, while discussing *Walls*, the bankruptcy court noted several differences in the facts. Here, (1) Debtor was not trying to bypass remedies under the Code; (2) Debtor had already exercised her remedy of objecting to the claim; (3) unlike in *Walls* where the debtor's bankruptcy case was completed before the relevant acts were taken by the creditor, B–Real's offensive action occurred during the pendency of Debtor's bankruptcy case; and (4) the simultaneous assertion of Debtor's rights under the FDCPA and the Code would not interfere with any pending bankruptcy proceedings.[14]

The bankruptcy court's attempt to differentiate *Walls* is unconvincing. While

*Walls* involved an FDCPA claim based upon an alleged discharge violation, the rationale for its holding that the Code precluded application of the FDCPA was based in large part upon the reasoning in the court's prior decision in MSR *Exploration*. We believe reliance upon *MSR Exploration* in this case is appropriate because, as noted above, that decision dealt with precisely the type of creditor conduct involved here, the filing of a disputed proof of claim in a bankruptcy case. MSR *Exploration* carefully explained the reasons for holding that a state law claim based on wrongful conduct occurring in a bankruptcy case was preempted by the Code; the Code represents a "whole system" designed to comprehensively define all rights and remedies of debtors and creditors. *Walls*, 276 F.3d at 510 *(quoting MSR Exploration*, 74 F.3d at 914). That reasoning is, we believe, also applicable in analyzing whether Debtor's FDCPA claim is precluded under these facts.

■ *Walls* notes that wherever possible, competing federal statutes should be read jointly. *Walls*, 276 F.3d at 510 *(citing Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)). However, the court concluded, to "permit a simultaneous claim under the FDCPA would ... circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors...." *Id.* And while its earlier decision invoked the preemption doctrine, we find the conclusion to be drawn from the court's reliance on *MSR Exploration* in *Walls* and other decisions to be inescapable: where the Code and Rules provide a remedy for acts taken in violation of their terms, debtors may not

---

**14.** The bankruptcy court also observed that after *Walls*, "confusion regarding the preemption doctrine continues in the Ninth Circuit." However, *Walls* did not discuss nor apply the

preemption doctrine because the Supremacy Clause operates only when there is a conflict between federal and state regulation. In other words, *Walls* is not a preemption case.

resort to other state and federal remedies to redress their claims lest the congressional scheme behind the bankruptcy laws and their enforcement be frustrated. The same concerns we articulate above in rejecting Debtor's state CPA claim justify a similar result as to her FDCPA action. Put simply, Congress did not intend to allow a debtor to bypass the statutory scheme clearly embodied in the language of the Code. *See also Wan v. Discover Fin. Servs., Inc. (In re Wan)*, 324 B.R. 124, 127 (N.D.Cal.2005) (communication alleged to be in violation of the FDCPA made to the debtor's counsel during the pendency of the bankruptcy case raised an even greater concern about potential overlap and conflict between the Code and the FDCPA than was present in *Walls*).

Spurning *Walls*, both Debtor and the bankruptcy court would urge us to invoke the reasoning espoused in *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir.2004), a case in which a debtor's FDCPA claim for violating the Code was allowed to proceed. In *Randolph*, a creditor sent a post-discharge letter to the debtor, allegedly in violation of the § 524 discharge. Noting that one federal statute should be found to have impliedly repealed another only when an irreconcilable conflict occurs when both co-exist, *Randolph* asserts that a court must evaluate whether competing statutes conflict before deciding whether preclusion applies. *Id.* at 730–31. Finding no direct conflict between the Code and FDCPA under the facts before it, the Seventh Circuit ruled that the statutes could both be applied, and the debtor could therefore pursue a claim for relief against the creditor under FDCPA outside the bankruptcy court. *Id.* at 733.

Of course, as a decision of the Ninth Circuit, this Panel is bound to apply *Walls* even were we inclined to agree with the logic and reasoning of *Randolph*. Mc-

*Donald v. Checks–N–Advance, Inc. (In re Ferrell)*, 358 B.R. 777, 791 (9th Cir. BAP 2006). But even if not so constrained, we would respectfully reject *Randolph's* analysis in this context and conclude, as in *Walls*, that the Code precludes application of the FDCPA under our facts.

Unlike in *Randolph*, where the debtor's claim against the creditor was based upon the creditor's actions taken after conclusion of the bankruptcy case, the purported FDCPA violation targets B–Real's act of filing a proof of claim in the pending bankruptcy case. Application of the FDCPA to this conduct would certainly conflict with the Code.

Under § 501(a), if a creditor desires to share in distributions in the bankruptcy case, a creditor may file a proof of claim. If the proof of claim is executed and filed in accordance with the Rules, it "shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f). Under § 502(a), the claim is "deemed allowed, unless a party in interest ... objects." The Rules prescribe the procedure for filing and resolving an objection to allowance of a claim. Rule 3007 (specifying that an objection to a claim be in writing, filed with the bankruptcy court, and that creditor receive at least 30–days notice of any hearing concerning the objection).

In contrast to the Code's claims process, FDCPA requires a debt collector and the debtor to conform to a debt validation procedure. FDCPA § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall provide a written notice to the consumer that includes a statement that unless the consumer within thirty days after receipt of the notice disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt

collector. FDCPA § 1692g(a)(3). The notice must also include a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector must obtain verification of the debt or a copy of a judgment against the consumer and mail a copy of such verification or judgment to the consumer. FDCPA § 1692g(a)(4). FDCPA further provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed ... the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

FDCPA § 1692g(b). If the consumer fails to dispute the validity of a debt, that failure may not be construed by any court as an admission of liability by the consumer. FDCPA § 1692g(c). Finally, a communication in the form of a formal pleading in a civil action is not to be treated as an initial communication for purposes of subsection (a) of this section. FDCPA § 1692g(d).

"Through this [debt validation] process, the debt collector learns whether the debt is contested and the reasons, if any, for the debtor's refusal to pay. The statutory scheme of the FDCPA thus ... ensures a cost effective means by which a debtor and debt collector can exchange information. This is an important part of the FDCPA's statutory scheme." *Hubbard v. Nat'l Bond & Collection Assocs., Inc.*, 126 B.R. 422, 428 (D.Del.1991). "After the validation procedure of § 1692g, a debt collec-

tor would have actual knowledge of the facts relevant to a particular debt and could be held liable under the FDCPA for any further debt collection efforts that violate the letter of the act. Therefore, under § 1692g, the debtor bears a responsibility to notify the debt collector of facts which the debt collector would not otherwise be aware." *Id.*

In our opinion, the debt validation provisions required by FDCPA clearly conflict with the claims processing procedures contemplated by the Code and Rules. Simply put, we find that the provisions of both statutes cannot compatibly operate.

For example, as noted above, a proof of claim filed in a bankruptcy case constitutes prima facie evidence of its validity and is deemed allowed unless and until the debtor objects to it. § 502(a); Rule 3001(f). If an objection is filed, the bankruptcy court resolves that objection after notice and a hearing. Rule 3007.

In contrast, under FDCPA, a debt is presumed valid if the debtor does not dispute the debt within thirty days after receipt of an "initial communication." Even then, FDCPA provides that, if the consumer fails to dispute the validity of a debt, that failure may not be construed by any court as an admission of liability by the consumer. FDCPA § 1692g(c).

Moreover, under the FDCPA, a "communication in the form of a formal pleading" shall not be treated as an initial communication. We question whether the filing of a proof of claim by a creditor constitutes an initial communication. If it is not an initial communication, then in order to comply with FDCPA, the debt collector must send another communication to the debtor containing the required statutory notice. However, sending such a notice to a debtor in a pending bankruptcy case has been held to violate the automatic stay. *Maloy v. Phillips*, 197

B.R. 721, 723 (M.D.Ga.1996). We are therefore puzzled as to how creditors can comply with both statutory schemes when the Code dictates they cease all collection actions, whereas FDCPA requires them to communicate with the debtor in connection with the collection of a debt.

Creditors likely would fare no better by placing the FDCPA required notice on a proof of claim form. Such a notice would undoubtedly cause confusion. If the notice is placed on the proof of claim, must the debtor, who may or may not be represented by counsel, comply with the requirements of FDCPA to dispute the debt? Or is it sufficient that the debtor follow the § 502/Rule 3007 procedure for objecting to a claim? [15]

The writing and timing requirements for objecting to a proof of claim further illustrate the conflict between the statutes. Rule 3007 requires that a debtor object to allowance of a claim in writing. However, there is disagreement in the courts whether a consumer must dispute a debt in writing under FDCPA § 1692g. *Compare Graziano v. Harrison,* 950 F.2d 107 (3d Cir.1991) (dispute must be in writing) with *Sanchez v. Robert E. Weiss, Inc. (In re Sanchez),* 173 F.Supp.2d 1029 (N.D.Cal. 2001) (no writing required). The Code requires the debtor to serve the claimant with a copy of the objection and notice of hearing at least thirty days prior to the hearing. Yet, under the FDCPA, a debtor has but thirty days to dispute the claim, which in turn commences an informal debt validation procedure.

Attempting to reconcile the debt validation procedure contemplated by FDCPA with the claims objection process under the Code results in the sort of confusion and conflicts that persuades us that Congress intended that FDCPA be precluded in the context of bankruptcy cases. We fail to understand how B–Real could comply with FDCPA § 1692g and its various notice and informational requirements because those provisions conflict with the Code and Rules. Yet, if Debtor is correct, presumably debt collectors must comply with all the provisions of FDCPA when attempting to collect debts in bankruptcy cases. We think avoiding this sort of disorder provides a solid basis for application of the Ninth Circuit's reasoning in *MSR Exploration* and *Walls.* Whatever shortcomings the Seventh Circuit in *Randolph* perceived in the Ninth Circuit's analysis, they are unpersuasive when viewed under our facts.

Debtor also urges that there is a shortage of appropriate remedies under the Code and Rules to address a creditor's misconduct in filing an improper proof of claim. Other than objecting to B–Real's proof of claim, Debtor suggests there are no adequate protections afforded under the bankruptcy laws. She maintains it is unfair to allow a creditor to assert unenforceable claims in a bankruptcy court and to require her to shoulder the burden of the costs and fees in objecting to such claims.

We may quickly dispense with Debtor's contention that she will be treated unfairly if she cannot sue B–Real under FDCPA. As explained by one court:

> Certainly [it] is something of a burden [to object to improper creditor claims], but, why would it be an unfair burden? Debtors in chapter 13 voluntarily file their cases, submitting themselves to an

---

**15.** Anecdotally, the members of the Panel agree that it is not uncommon in bankruptcy cases to encounter creditor proofs of claim, or even motions, that display an FDCPA notice on their face. As noted, perhaps in the Seventh Circuit after *Randolph,* this phenomenon is required.

adjustment of their debts. A part of this voluntary process necessarily involves them in a claims analysis, making any argument by a debtor that it is burdensome for the debtor to examine proofs of claims a hollow one.... This Debtor, through counsel, did object to one claim in the case, demonstrating that an objection is a relatively simple pleading. The one filed is a single-page document. There is nothing to indicate that the proofs of claim in this or other chapter 13 cases in this district are difficult to see or review. Certainly, they are not difficult to review for one of the Plaintiffs, the trustee.

*Yancey v. Citifinancial, Inc. (In re Yancey)*, 301 B.R. 861, 870 (Bankr.W.D.Tenn. 2003). As in *Yancey*, in this case, it was a fairly simple process for Debtor to object to B–Real's proofs of claim, and the bankruptcy court disposed of that objection without apparent complication, undue delay or expense. Under the circumstances, the claims objection process was not unfair to Debtor.[16]

Debtor shuns Rule 9011 as an inadequate remedy for B–Real's alleged misconduct, because that rule allows a creditor to withdraw a bogus proof of claim under the safe-harbor provisions when challenged.[17] Debtor also complains that it is more difficult to recover sanctions under the standards incorporated by Rule 9011 as compared to the "strict liability" approach for recovery of damages, attorney's fees, and costs for violations of FDCPA.

■ While Debtor's lament may be true, her reluctance to pursue sanctions rings hollow considering that, instead, she and her counsel elected to follow the more procedurally complicated route of filing an adversary complaint. We are confident that Rule 9011 provides an adequate remedy for dealing with baseless proofs of claim. *See In re Wingerter*, 394 B.R. 859, 868 (6th Cir. BAP 2008) (Rule 9011 applies to proof of claim abuse and court "should test the signer's conduct by inquiring what was reasonable to believe at the time the [claim] was submitted."); *Rogers v. B–Real, L.L.C. (In re Rogers)*, 391 B.R. 317, 323 (Bankr.M.D.La.2008) ("Rule 9011 can be used to sanction a creditor that files a proof of claim without proper prefiling investigation and support."); *In re Dansereau*, 274 B.R. 686, 688–89 (Bankr.W.D.Tex. 2002); *In re McAllister*, 123 B.R. 393, 395 (Bankr.D.Or.1991); *cf. Adair v. Sherman*, 230 F.3d 890, 895 n. 8 (7th Cir.2000) (Rule 9011 applies to filing fraudulent proofs of claim).

■ As an alternative response to a groundless claim, Debtor should also remember that bankruptcy courts possess authority pursuant to § 105(a)[18] "to im-

---

**16.** Because the statute of limitations is an affirmative defense, a debtor is indeed burdened by the requirement that an objection be filed to a proof of claim that is, on its face, clearly time-barred. In deeming uncontested proofs of claim which otherwise comply with the Code and Rules prima facie valid and allowed, Congress and rule-makers arguably elevated the need for efficiency in bankruptcy cases too far. But while we understand a debtor's procedural predicament, any solution must come via an amendment to the Code and Rules, not by resort to an action under FDCPA.

**17.** There is no indication in the record that Debtor served B–Real with a proposed sanctions motion as required by Rule 9011(c)(1)(A) prior to objecting to its proofs of claim.

**18.** Section 105(a) provides that:
The court may issue *any order, process, or judgment that is necessary or appropriate* to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to

pose sanctions for a pattern of bad faith conduct that transcends conduct addressed by particular rules or statutes." *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 412 (9th Cir. BAP 2005) (citation omitted). While § 105(a) empowers bankruptcy courts to impose civil, but not criminal or punitive sanctions, *Id.*, if a purported creditor abuses the claims process, we are confident that § 105(a) provides an effective mechanism for addressing that misconduct.[19]

In short, we are convinced that the Code and Rules are up to the task of compensating a debtor for any damages or costs occasioned by, and to punish and deter, those who would abuse the bankruptcy claims process.[20] For all of the above reasons, we believe *Walls* compels our holding that Debtor's claim against B–Real under FDCPA is precluded by the Code.[21] It was error for the bankruptcy court to deny B–Real's motion to dismiss Debtor's FDCPA claim.

---

> enforce or implement court orders or rules, or *to prevent an abuse of process*.
> (Emphasis added).

**19.** Of course, there are also criminal penalties prescribed for truly egregious conduct in filing proofs of claim. *See* 18 U.S.C. § 152 and § 3571.

**20.** Again, we note our concern that prosecution of FDCPA actions against creditors for filing defective proofs of claim, with the attendant burden so imposed on creditors and the bankruptcy courts, be viewed as a source of profits for debtors and their counsel. While one court noted that FDCPA arms "consumers with a shield against the overly zealous debt collector [and that] this shield is particularly important in our modern computer-driven world," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 32 (2d Cir.1996), others have warned that it would be absurd to allow the statute to become a "sword in the hands of the debtor." *Ignatowski v. GC Servs.*, 3 F.Supp.2d 187, 191 (D.Conn.1998).

## VII. CONCLUSION

We REVERSE the bankruptcy court's order denying B–Real's motion to dismiss debtor's complaint. We REMAND this matter to the bankruptcy court for entry of an order and further proceedings consistent with this Opinion.

JURY, Bankruptcy Judge, Concurring.

I agree that debtor's complaint should have been dismissed and join in the majority's conclusions on preemption of the CPA and preclusion of the FDCPA by the Code on these facts. However, because I believe that the act of filing a proof of claim is neither a violation of the CPA by definition nor a debt collection act under the FDCPA, I write separately. Also, I write to note an ambiguity in the breadth of the Ninth Circuit's holding in *Walls*, 276 F.3d 502.

### I. The Scope of the CPA

I start with the language of the statute itself in determining its scope. *United*

---

**21.** Our beacon is Ninth Circuit case law. But in concluding that the Code precludes Debtor's FDCPA claim, we join what appears to be a significant majority of courts from across the country that have come to the same conclusion. *In re Varona*, 388 B.R. 705, 719 (Bankr.E.D.Va.2008) ("It appears a majority of courts that have considered whether a proof of claim may be the subject of a FDCPA violation have concluded the FDCPA is not intended to provide a remedy for claims filed in a bankruptcy proceeding." (citing cases)); *see also Williams v. Asset Acceptance, LLC, (In re Williams)*, 392 B.R. 882, 886 (Bankr. M.D.Fla.2008) (relying on the "overwhelming authorities" supporting preclusion of FDCPA claims based upon the filing of a proof of claim in a bankruptcy case); *Middleebrooks v. Interstate Credit Control, Inc.*, 391 B.R. 434, 437 (D.Minn.2008) (holding that an FDCPA claim cannot be premised on an unmeritorious, time-barred proof of claim filed during bankruptcy proceedings); *but see In re Rogers*, 391 B.R. at 325–26 (following *Randolph* and declining to follow *Walls*).

*States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Id.; see also United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (if the words are clear, the court must apply the statute by its terms unless to do so would lead to absurd results). I also look to the design of the statute as a whole and to its object and policy in determining the meaning of a statute. *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990).

The express purpose of the CPA is to complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition. CPA § 19.86.920. The CPA declares that "[u]nfair methods of competition[22] and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. CPA § 19.86.020. What constitutes "unfair or deceptive acts or practices" is not defined in the statute. "[T]rade or commerce" is defined as "the sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." CPA § 19.86.010(2).

Any doubt that the CPA is inapplicable under the circumstances here is eliminated by examining the requirement that the unfair acts or practices occur in the conduct of any trade or business. The filing of a proof of claim cannot reasonably be construed as conduct occurring in the sale of assets or services or in commerce within the ordinary meaning of those terms.[23] I thus conclude that the conduct debtor complains of here—the filing of a proof of claim—does not fall within the express language of the statute, reasonably construed. Courts in other jurisdictions with similar state law consumer protection statutes have so concluded. *See Williams v. Asset Acceptance, LLC (In re Williams)*, 392 B.R. 882, 887–88 (Bankr.M.D.Fla.2008) (filing a proof of claim not a "trade" or "commerce" within the meaning of the Florida Deceptive and Unfair Trade Practices Act); *Rogers v. B–Real, L.L.C. (In re Rogers)*, 391 B.R. 317, 326–327 (Bankr. M.D.La.2008) (dismissing debtor's claim for violation of Louisiana's Unfair Trade Practice's Laws on grounds that the statute did not apply to the proof of claim process).

The standard applicable to a motion to dismiss is whether debtor has properly stated a claim under the CPA, which entails five elements: (1) an unfair or deceptive practice; (2) in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the party in his business or property; and (5) which injury is causally linked to the unfair or deceptive act. *Indus. Indem. Co. of the N.W., Inc. v. Kallevig*, 114 Wash.2d 907, 920–921, 792

---

**22.** The filing of a proof of claim cannot constitute unfair competition under the CPA by any stretch of the imagination. In *Boggs v. Whitaker, Lipp & Helea, Inc., P.S.*, 56 Wash. App. 583, 586–87, 784 P.2d 1273, 1274–75 (Wash.Ct.App.1990), the court found that unfair competition did not include false representations and sale of investments to consumers; the term applied only to acts against competitors.

**23.** Judicial construction of the term trade is limited. For example, one court found the term trade, as used by the CPA, only includes the entrepreneurial or commercial aspects of professional services, not the substantive quality of services provided. *Ramos v. Arnold*, 141 Wash.App. 11, 20, 169 P.3d 482, 486 (2007). This construction is not helpful applied to the facts of the present case.

P.2d 520, 528 (1990). Failure to meet any one of these elements under the CPA is fatal to the claim. *Sorrel v. Eagle Health-care, Inc.*, 110 Wash.App. 290, 298, 38 P.3d 1024, 1028 (Wash.Ct.App.2002). Because debtor cannot demonstrate that filing a proof of claim is an act or practice in trade or commerce, I believe that debtor is unable to state a claim under the CPA as a matter of law. I would dismiss the second claim for relief on that alternative ground.

## II. The Scope of the FDCPA

The declared purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors...." FDCPA § 1692(e). Congress sought to eliminate such practices because they contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." FDCPA § 1692(a). Notably, the statute is applicable only to debt collectors and not to creditors.[24]

The FDCPA regulates many aspects of debt collection. Under the statute, debt collectors are prohibited from making false or misleading representations and from engaging in various abusive and unfair practices. For example, a debt collector may not use violence, obscenity, or repeated annoying phone calls, and may not falsely represent the character, amount or legal status of the debt. FDCPA §§ 1692d; 1692e(2)(A). A debt collector is also prohibited from using certain enumerated methods in its efforts to collect a debt owed by a consumer to a creditor. FDCPA §§ 1692e; 1692f. Lastly, the FDCPA sets out rules that a debt collector must follow for "acquiring location information" about the debtor, communicating about the debtor (and the debt) with third parties, and bringing legal actions. FDCPA §§ 1692b; 1692c(b); and 1692i.

On this last point, the FDCPA does not explicitly regulate the content of complaints or other pleadings that are transmitted in connection with an actual legal proceeding and only prohibits the use of the courts as a means to collect a debt in a few specific ways, none of which are at issue here. *See* FDCPA § 1692i(a) (proscribing the debt collector's use of judicial proceedings in judicial districts other than where the real property is located, where the consumer signed a contract sued upon and where the consumer resides); § 1692e(13) & (15) (proscribing a debt collector's false representation that documents are, or are not, legal process). There is also no express indication in the statutory language that a proof of claim filed in a bankruptcy court is, as a matter of law, excluded from the statute's reach.

What is evident from the name of the statute itself, its express purpose, and the express language of the various statutory provisions, including § 1692f which is referenced by debtor in her complaint, is that Congress meant to prohibit certain types of conduct used for debt collection. In light of the conduct regulated by the statute, it makes no sense to extend its reach to include the filing of a proof of claim in a bankruptcy case for the reasons set forth below.

---

**24.** Under the FDCPA, the term "creditor" means "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." FDCPA § 1692a(4). The term "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The statute provides examples of some exclusions. FDCPA § 1692a(6).

## A. The Filing of a Proof of Claim is Not a Debt Collection Activity Within the Meaning of the FDCPA

The FDCPA's purpose is to govern the methods used to collect debts. The claims process, on the other hand, is a process in which the amount and validity of a debt is established for purposes of obtaining a distribution from a bankruptcy estate.[25] To be sure, there are real differences between the methods used to collect a debt and the claims process which is used to establish the amount and validity of the debt.

A "FDCPA claim has nothing to do with whether the underlying debt is valid," as it concerns the method of collection. *Green v. Ford Motor Credit Co.*, 152 Md.App. 32, 58–60, 828 A.2d 821, 836–38 (2003); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir.1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."); *see also Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir.1999) (plaintiff's claim that debt was invalid irrelevant to FDCPA claim).

Under the FDCPA, the "abusive method of collection" applies regardless of the debt's validity because the focus is on the method of collection. "The statute does not make an exception for liability under section 1692g when the debtor does in fact owe the entire debt." *Baker*, 677 F.2d at 777. Outside bankruptcy, if the method of collection is improper, the debt collector will be subject to the FDCPA regardless of the debt's validity. However, in bankruptcy, if appellant had a valid claim, a

violation of the FDCPA could never occur simply by filing a proof of claim.

Adopting debtor's position would result in a construction of the statute that would yield inconsistent results. The FDCPA cannot be exclusively procedural in one class of cases that happen outside bankruptcy and entirely substantive in bankruptcy. One court observed the distinction between the wrongful conduct associated with the bankruptcy claims process and abusive methods of collection that could be addressed by the FDCPA:

> [T]he appropriate standard for judgment of whether sanctions should be imposed in the bankruptcy claim process is whether the proof of claim is 'false or fraudulent,' reflecting the essence of the purpose of the bankruptcy code to assemble and validate claims against a debtor's estate, in contradistinction of the purpose of FDCPA, which is to provide an action to contest the *method* of debt collection.

*In re Varona*, 388 B.R. 705, 721 (Bankr. E.D.Va.2008) (emphasis in original).

Moreover, I do not see how furnishing the type of information contained in a proof of claim would, in any sense, be an "unfair or unconscionable means" of debt collection when filed in the bankruptcy court. On the contrary, by filing a proof of claim, appellant was merely following the claims procedure prescribed by the Code and Rules. While the proof of claim may have been based on a debt that debtor did not owe, it does not logically follow that whenever a debt collector files a proof

---

**25.** The filing of a proof of claim in a bankruptcy case is authorized by § 501 of the Bankruptcy Code: "A creditor ... may file a proof of claim." § 501(a). The requirements of a proof of claim are provided in Rule 3001, which mandates, among other things, that a proof of claim be in writing and conform substantially to the appropriate Official Form 10, be executed by the creditor or the creditor's authorized agent, and, where based on a writing, filed with the original or a duplicate of that writing. Rule 3001(a)-(c). The evidentiary effect of a proof of claim filed and executed in accordance with the Rules is that it constitutes prima facie evidence of the validity and amount of the debt. Rule 3001(f).

of claim in bankruptcy proceedings that this constitutes an unlawful attempt to collect a debt in violation of FDCPA § 1692f. The FDCPA regulates a method of procedure of collection; filing a proof of claim is not an impermissible procedure.

## B. The Purpose of the FDCPA to Protect Consumers From Abusive Debt Collection Is Not Implicated in the Claims Process

Debtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled. Upon the filing of chapter 7 petition, all of the property of the debtor (with some exceptions) becomes property of the estate, which the trustee takes over and administers for the benefit of creditors. *See* §§ 541 and 701. Distributions are made from the estate according to a specific statutory scheme. *See* § 726. Likewise, upon the filing of a chapter 13 petition, all of the debtor's property, including that specified in § 541 and property which the debtor acquires after the filing (such as earnings), become property of the estate, subject to distribution by the chapter 13 trustee pursuant to the plan. *See* §§ 541, 1306, 1325, 1326; Rule 3021.

A bankruptcy estate, whether in a chapter 7 or 13, exists under the auspices of the court and its officers. The filing of a proof of claim is thus a request to share in the distribution of that estate under court control.

The statutory purpose of the FDCPA, as well as common sense, leads me to conclude that there is nothing "unfair" or "unconscionable" about filing a proof of claim in a bankruptcy case even if it could be construed as a debt collection activity.

The FDCPA's purpose of protecting unsophisticated consumers from unscrupulous debt collectors is simply not implicated at all. *See Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,* No. 94 CV 5756, 1995 WL 704778, at *4 (E.D.N.Y. Nov. 16, 1995) (noting that the FDCPA is intended to protect persons from abusive debt collection practices at the earliest stage and, therefore, once the dispute reaches the courts, the purposes behind the FDCPA are moot). Simply put, except for the instances cited above, the FDCPA does not impact .court controlled procedures such as the claims allowance process.[26]

This conclusion is consistent with Congress's intent in enacting the FDCPA to eliminate the abusive practices that contributed to the number of personal bankruptcies. FDCPA § 1692(a). In *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the United States Supreme Court observed:

> An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place....

*Id.* at 650, 94 S.Ct. 2431. The Supreme Court concluded: "[i]n short, the Consumer Credit Protection Act sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained un-

---

26. *See* FDCPA §§ 1692i(a), 1692e(13).

der the Bankruptcy Act." *Id.* at 651, 94 S.Ct. 2431.

I find that the express purpose and language in the FDCPA indicate that Congress did not intend to extend its provisions to the filing of a proof of claim in a bankruptcy case. This finding does not undermine the goals and purpose of the FDCPA, which is to protect consumers from abusive methods of collection. The filing of a proof of claim does not implicate such collection methods, as discussed above. Accordingly, even taking debtor's allegations as true, I conclude that she has failed to state a claim for relief against appellant under the FDCPA.

### III. *Walls vs. Randolph* Dichotomy

The parties and the bankruptcy court highlight an apparent disagreement between the Ninth Circuit in *Walls v. Wells Fargo Bank, N.A.* and the Seventh Circuit in *Randolph v. IMBS, Inc.* on whether the Code precludes or impliedly repeals the FDCPA where the underlying allegedly wrongful act arises from or is related to a bankruptcy proceeding of the debtor. In *Randolph*, after thoughtful analysis, the Seventh Circuit addresses "[w]hether overlapping and not entirely congruent remedial systems [the FDCPA versus the Code] can coexist" and concludes the Code "does not work an implied repeal of the FDCPA." *Randolph*, 368 F.3d at 731–732. It concludes that the two federal statutes can coexist so long as the overlap does not create an irreconcilable conflict.[27]

To the contrary, the Ninth Circuit in *Walls* addresses facts similar to those in *Randolph*[28] and, without the thorough

analysis of *Randolph*, appears to broadly conclude that any remedy under FDCPA would circumvent the Code's remedial scheme. *Walls*, 276 F.3d 502. In doing so, the Ninth circuit relies heavily on its ruling in *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910 (9th Cir.1996) including adopting an extensive quote about the comprehensive nature of the Code. *Walls*, 276 F.3d at 510. However, *MSR Exploration* is a preemption case, holding that the Code preempts a state law cause of action (malicious prosecution) arising under California law. Because of the reliance on MSR *Exploration* and the lack of any discussion in *Walls* of whether the Code impliedly repeals a competing federal statute, i.e. the FDCPA, I question whether the Ninth Circuit intended the holding of *Walls* to apply to any overlap between the two statutes or be limited to its facts: whether a violation of the discharge injunction of § 524 creates an FDCPA claim.

For this reason, I do not believe the holding of this case is controlled by *Walls* so much as based on our thorough analysis above.

---

27. The majority here finds that the filing of a proof of claim does create such an irreconcilable conflict such that the Code precludes the creation of a claim for relief under FDCPA under our facts and I do not disagree.

28. Both cases deal with a circumstance where a creditor attempted to collect on a debt post discharge, although using dissimilar methods since one was an unsecured debt and the other was secured.