**MSR EXPLORATION, LTD., a Canadian corporation; Gypsy–Highview Gathering System, Inc., a Montana corporation, Plaintiffs–Appellants,**

v.

**MERIDIAN OIL, INC.; Fina Oil & Chemical Co., Inc.; Blackleaf Partners, Inc.; Blackleaf Gas Assocs., Defendants–Appellees.**

No. 94–35833.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1995.

Decided Jan. 22, 1996.

---

Kenneth D. Tolliver, Wright, Tolliver and Guthals, Billings, Montana, for plaintiffs-appellants.

Stephen H. Foster and W. Scott Mitchell, Holland & Hart, Billings, Montana, Steven M. Johnson, Church, Harris, Johnson & Williams, Great Falls, Montana, and Mark D. Parker, Billings, Montana, for defendants-appellees.

Before: WRIGHT, FERNANDEZ, and KLEINFELD, Circuit Judges.

FERNANDEZ, Circuit Judge:

MSR Exploration, Ltd. and Gypsy–Highview Gathering Systems, Inc. (collectively MSR) brought this action for malicious prosecution against Meridian Oil, Inc., Fina Oil & Chemical Co., Inc., Blackleaf Partners, Inc., and Blackleaf Gas Associates, LLC (collectively Producers). The action was based upon MSR's claim that Producers had maliciously filed and pursued creditors' claims in MSR's Chapter 11 bankruptcy proceeding. The district court dismissed for lack of jurisdiction because it found that the action was entirely preempted by the provisions of the bankruptcy law. We agree that it is preempted and we affirm.

## BACKGROUND

MSR had a contract with the Producers' predecessors in interest to take and process raw natural gas from the Blackleaf Canyon Unit in Teton County, Montana. The contract required MSR to pay for the gas on a monthly basis and also required MSR and the Producers to share equally in any drop in gas prices. From 1982 until 1985, MSR purchased and paid for the gas each month without dispute.

However, in late 1984 after a drop in the price of processed gas, MSR informed the Producers that it would be reducing the price it paid for gas from the Unit. In early 1985, a unit operator employed by one of the Producers objected to the lower price, wrote a letter stating that the deduction was contrary

to the contract, and directed MSR to "stop making these deductions immediately and issue a check to us to cover all prior deductions." MSR did not agree and continued as before, without dispute. In 1987, because the Producers were unable to meet the contract requirements, MSR and the Producers agreed to a new pricing schedule. MSR continued to purchase and pay for raw gas pursuant to that schedule.

In 1992, MSR filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the District of Montana. The Producers filed creditors' claims against MSR based upon the assertion that had been made by the unit operator in 1985. After MSR filed objections to the Producers' claims, the bankruptcy court entered an order disallowing them. MSR did not pursue sanctions, attorneys fees, or any other remedy in the bankruptcy court.

Instead, MSR waited until its reorganization plan was confirmed and substantially consummated, whereupon it brought this malicious prosecution action in the district court. The Producers asserted that the claim was preempted and could only be pursued in the bankruptcy court itself. The district court agreed and dismissed for lack of subject matter jurisdiction. This appeal ensued.

## STANDARD OF REVIEW

■ The existence of subject matter jurisdiction is a matter of law reviewed de novo. *Seven Resorts, Inc. v. Cantlen,* 57 F.3d 771, 772 (9th Cir.1995) (this court reviews de novo the district court's determination that it lacks subject matter jurisdiction); *Valdez v. United States,* 56 F.3d 1177, 1179 (9th Cir.1995) (same). Similarly, preemption is a question of law which we review de novo. *See Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812, 816 (9th Cir.1992) (ERISA preemption).

## DISCUSSION

The major issue in this case is whether state malicious prosecution actions for events taking place within the bankruptcy court proceedings are completely preempted by federal law. If they are, it is clear that there is a federal question involved in this action, and that will establish the jurisdiction of the district court to rule upon the issue. *See* 28 U.S.C. § 1331. As the Supreme Court said in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (citation omitted), "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *See also Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 747–48 (9th Cir.1993); *Milne Employees Ass'n v. Sun Carriers, Inc.,* 960 F.2d 1401, 1406 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). Thus, preemption and jurisdiction are to that extent inexorably intertwined. We shall so consider them here.

■ We do recognize that preemption assertions are normally matters of defense and will not suffice to establish federal jurisdiction. *See, e.g., Caterpillar,* 482 U.S. at 392–93, 107 S.Ct. at 2430. Again, the complete preemption doctrine is often an exception to that rule. *Id.* Even then we must be careful. A plaintiff remains master of his pleading and may pitch his complaint on entirely separate grounds, even though he could have spelled out what would have been a preempted claim. When that occurs, a preemption assertion remains a matter of defense and will not establish jurisdiction. *See Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. at 2433; *Karambelas v. Hughes Aircraft Co.,* 992 F.2d 971, 974–75 (9th Cir.1993); *Westinghouse Elec. Co. v. Newman & Holtzinger, P.C.,* 992 F.2d 932, 935–36 (9th Cir.1993). That conceptual difficulty is not a difficulty in this case. The complaint filed by MSR is self-consciously and entirely one which seeks damages for a claim filed and pursued in the bankruptcy court. The complaint states precisely that on its face and even goes on to refer to the fact that Federal Bankruptcy Rule 9011 provides sanctions for those who file improper claims. Therefore, nothing is hidden here. The Producers did not need to inject anything into the case in order to show what its true nature was.

Of course, the district court did ultimately determine that preemption deprived it of jurisdiction, but we see no anomaly in that. It is true that we have indicated that "where federal law preempts state law yet fails to provide its own cause of action" federal jurisdiction is not established. *Ultramar America, Ltd. v. Dwelle,* 900 F.2d 1412, 1416 (9th Cir.1990); *see also Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1370 n. 5 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). That presents no impediment here because there *is* a federal remedy even if it is not to be found outside of the bankruptcy court. The fact that MSR did not avail itself of the remedy does not suggest that the district court had no jurisdiction to determine whether the purported malicious prosecution action was preempted. Nothing in *Ultramar* indicates the contrary. In addition, it almost goes without saying that the district court had jurisdiction to decide whether it had jurisdiction. In making that decision, it had to consider the preemption issue, as we must now do.[1] Having cleared away the underbrush, we now turn to the trees.

As the Supreme Court said in *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (citations omitted):

> The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., art. VI, cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose."

*See also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). For a number of reasons, we are satisfied that preemption does apply in this case.

First, Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the district courts as an initial matter. 28 U.S.C. § 1334(a). The mere fact that exclusive jurisdiction over a particular action is in the district courts would not necessarily mean that a later malicious prosecution action must be brought there. However, it does militate in that direction. In *Berg v. Leason,* 32 F.3d 422 (9th Cir.1994), we allowed a malicious prosecution claim to go forward. There the defendant had brought, and lost, a RICO claim, 18 U.S.C. § 1961–68, and a federal securities claim, 15 U.S.C. §§ 78j(b), 78t(a) in federal court. There was concurrent state and federal court jurisdiction over the RICO claim, but federal court jurisdiction over the securities claim was exclusive. We did not find it dispositive, but did agree that the defendant's argument against allowing a malicious prosecution action had "greater force" with regard to the securities claim because the federal courts did have exclusive jurisdiction over that claim. *Id.* at 425–26. Thus, the exclusivity of federal jurisdiction over bankruptcy matters is an indication of Congress's intent. Although a preemption claim is asth-

---

1. Because we do find complete preemption, we need not seek to unravel the mysteries of "related-to" bankruptcy jurisdiction as they may apply when a Chapter 11 plan has been substantially consummated. *See In re Fietz,* 852 F.2d 455, 457 (9th Cir.1988); *Cook v. Chrysler Credit Corp.,* 174 B.R. 321, 327 (M.D.Ala.1994); *Walnut Associates v. Saidel,* 164 B.R. 487, 492–93 (E.D.Pa.1994).

Nor need we consider the somewhat arcane diversity questions which might be presented by the fact, among others, that Blackleaf Gas Associates, LLC, is an entity that partakes of both corporate and partnership characteristics. *See* 28 U.S.C. § 1332; 17 Wy.Stats. §§ 17–15–101 to 17–15–136 (1977).

enic when applied to cases where there is concurrent state and federal jurisdiction over the underlying federal cause of action, it becomes puissant when applied to bankruptcy.

Second, in a related vein, a mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike.[2] While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process.

Debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution. Those possibilities might gravely affect the already complicated processes of the bankruptcy court. *See, e.g., Gonzales v. Parks,* 830 F.2d 1033 (9th Cir. 1987) (attempted malicious prosecution claim for debtors' filing of a petition in bankruptcy); *Koffman v. Osteoimplant Technology, Inc.,* 182 B.R. 115 (D.Md.1995) (attempted malicious prosecution claim for the filing of an involuntary petition and for violation of a stay); *Edmonds v. Lawrence Nat'l Bank & Trust Co.,* 16 Kan.App.2d 331, 823 P.2d 219 (1991) (attempted malicious prosecution claim for filing a petition to revoke a debtor's discharge); *Idell v. Goodman,* 224 Cal. App.3d 262, 273 Cal.Rptr. 605 (1990) (attempted malicious prosecution claim for adversary proceeding to preclude a discharge of debts). Of course, the opportunities for asserting malicious prosecution claims would only be limited by the fertility of the pleader's mind and by the laws of the state in which the proceeding took place.

In short, the highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions. To put it another way, the problem here is not only one of state courts deciding issues of federal law in one manner or another. That is not an entirely unique situation, even when uniformity is required. *See Berg,* 32 F.3d at 426. The difficulty here goes much deeper. It is a question of state courts, in effect, interfering with the whole complex, reticulated bankruptcy process itself. That is not to say that the need for uniformity should be denigrated. There can be no doubt that Congress *did* place considerable weight on the need for a uniform bankruptcy process, which leads to our third reason for finding preemption.

Bankruptcy law does require uniformity, and that need persuaded the framers of the United States Constitution to expressly grant Congress the power "to establish ... uniform Laws on the subject of Bankruptcies throughout the United States." Art. I, § 8, cl. 4. At a time when each grant of power to the federal government was often looked upon with a degree of suspicion, Madison, while engaging in a lengthy defense of various grants that might seem obvious today, was able to refer to the bankruptcy provision rather tersely:

> The power of establishing uniform laws of bankruptcy is so intimately connected with the regulation of commerce, and will prevent so many frauds where the parties or their property may lie or be removed into different States, that the expediency of it seems not likely to be drawn into question.

*The Federalist* No. 42, at 308 (James Madison) (Benjamin Fletcher Wright ed., 1961). Justice Story was of the same opinion. He indicated that the reasons for conferring the bankruptcy power upon the United States:

---

2. For example, the court has great authority over the allowance and disallowance of claims, for a myriad of reasons. *See* 11 U.S.C. § 502. Similarly, it can affect debtors, creditors, and claims in ways that would never be dreamt of outside of the bankruptcy process. *See, e.g.,* 11 U.S.C. §§ 365, 506.

result from the importance of preserving harmony, promoting justice, and securing equality of rights and remedies among the citizens of all the states. It is obvious, that if the power is exclusively vested in the states, each one will be at liberty to frame such a system of legislation upon the subject of bankruptcy and insolvency, as best suits its own local interests and pursuits. Under such circumstances no uniformity of system or operations can be expected.... There can be no other adequate remedy than giving a power to the general government to introduce and perpetuate a uniform system.

2 Joseph Story, Commentaries on the Constitution of the United States § 1107 (2d ed. 1851).

It is true that in many circumstances state courts can, and do, resolve questions of federal law "with no difficulty." *Berg,* 32 F.3d at 426. Nevertheless, the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone. Of course, Congress did provide a number of remedies designed to preclude the misuse of the bankruptcy process. *See, e.g.,* Fed.Bankr.R. 9011 (frivolous and harassing filings); 11 U.S.C. § 105(a) (authority to prevent abuse of process); 11 U.S.C. § 303(i)(2) (bad faith filing of involuntary petitions); 11 U.S.C. § 362(h) (willful violation of stays); 11 U.S.C. § 707(b) (dismissal for substantial abuse); 11 U.S.C. § 930 (dismissal under Chapter 9); 11 U.S.C. § 1112 (dismissal under Chapter 11). That, too, suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents. *Cf. Mertens v. Hewitt Assocs.,* 508 U.S. 248, 252–54, 113 S.Ct. 2063, 2067, 124 L.Ed.2d 161 (1993) (enforcement scheme in ERISA indicates Congress did not forget other remedies); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987) (ERISA remedies preempt others, even if some possible remedies are left out); *Gibson v. Prudential Ins. Co.,* 915 F.2d 414, 418 (9th Cir.1990) (same).

Last, though far from least, we have previously spoken to the need for preemption in this area. In *Gonzales,* the debtors had defaulted on an obligation, and the creditors attempted to foreclose on the debtors' real property. 830 F.2d at 1033. Thereupon, the Gonzaleses filed a Chapter 11 bankruptcy proceeding, which halted the sale. The creditors decided that the filing was an abuse of process, so they sued for that tort in state court and obtained a default judgment. *Id.* at 1033–34. The Gonzaleses then filed an adversary proceeding to obtain relief from the state judgment. The bankruptcy court granted relief, the district court affirmed, and so did we. In affirming, we said:

Implicit in the [creditors'] appeal is the notion that state courts have subject matter jurisdiction to hear a claim that the filing of a bankruptcy petition constitutes an abuse of process. We disagree with that assumption. Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating. The ability collaterally to attack bankruptcy petitions in the state courts would also threaten the uniformity of federal bankruptcy law, a uniformity required by the Constitution. U.S. Const. art. I, § 8, cl. 4.

That Congress' grant to the federal courts of exclusive jurisdiction over bankruptcy petitions precludes collateral attacks on such petitions in state courts is supported by the fact that remedies have been made available in federal courts to creditors who believe that a filing is frivolous. Debtors filing bankruptcy petitions are subject to a requirement of good faith, and violations of that requirement can result in the imposition of sanctions. Con-

gress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event, it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall·be utilized.

*Id.* at 1035–36 (citations and footnotes omitted). Finally, we indicated that the state court judgment could be collaterally attacked and set aside because the case was within exclusive federal jurisdiction. *Id.* at 1036.

What we said in *Gonzales* applies to this case. Here, too, there is the threat that the exclusive jurisdiction of the bankruptcy court will be invaded and that uniformity will be undercut. A creditor's claim may be unmeritorious, but then so too might a debtor's petition. In fact, a creditor may have less flexibility than a debtor. The debtor initiates the process and, as here, can obtain a cutoff date for the filing of claims. The creditor may have less time to ruminate on the merits of the claim before filing it. A failure to appear in a timely fashion may well forfeit whatever rights the creditor might have. Thus, while a creditor's claim cannot be said to be solely defensive in nature, it does have that flavor to some extent. The threat of later state litigation may well interfere with the filings of claims by creditors and with other necessary actions that they, and others, must or might take within the confines of the bankruptcy process. Whether creditors should be deterred, and when, is a matter unique to the flow of the bankruptcy process itself—a matter solely within the hands of the federal courts. Nor can we be insouciant about creditors' rights on the theory that the law is designed to help debtors. To so decide would be shortsighted, even purblind. Bankruptcy law does not exist solely for debtors. It is also for the benefit of creditors; it gives them a single forum where debts and priorities can be determined in an orderly manner, a forum where those debts can be collected in whole or (more likely) in part. As Justice Story put it long ago: "The general object of all bankrupt ... laws is, on the one hand, to secure to creditors an appropriation of the property of their debtors *pro tanto* to the discharge of their debts ...; and, on the other hand, to relieve unfortunate and honest debtors from perpetual bondage to their creditors...." 2 Joseph Story, Commentaries on the Constitution of the United States § 1106 (2d ed. 1851).

## CONCLUSION

In arguing for the viability of its malicious prosecution action, MSR asks for a world where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding. While bankruptcy proceedings are not irenic, we determine that they are more peaceful than what MSR would have. We hold that MSR's malicious prosecution action against the Producers is completely preempted by the structure and purpose of the Bankruptcy Code. Therefore, MSR's purported action must, in fact, be a federal claim. That claim, however, should have been brought in the bankruptcy court itself, and not as a separate action in the district court. Thus, the district court properly determined that it lacked jurisdiction to hear the matter.

AFFIRMED.