O’Donnell, J.
{¶ 1} The issue we confront in this appeal is whether the claims of PNH, Inc., and Ronald Creatore against Alfa Laval Flow, Inc., for abuse of process and tortious interference with a contract are preempted by the United States Bankruptcy Code because they seek to recover for misconduct allegedly committed during a federal bankruptcy court proceeding.
{¶ 2} PNH and Creatore asserted that Alfa Laval misused an involuntary-bankruptcy case it filed against Girton, Oakes & Burger, Inc., in an effort to eliminate Creatore as a competitor in the sale of equipment for sanitary processing of food and beverages. The trial court dismissed these claims, and the appellate court affirmed, holding that federal law has preempted state-law causes of action alleging the abuse of bankruptcy proceedings.
{¶ 3} In enacting the Bankruptcy Code, the United States Congress established a comprehensive scheme intended to promote the uniformity of bankruptcy law, and it provided for federal remedies to deter the abuse of bankruptcy court proceedings. To permit an Ohio litigant to assert state-law claims for misconduct committed during a bankruptcy proceeding as a supplement to these federal remedies would frustrate the intent of Congress by establishing standards of conduct for Ohio litigants that vary from proceedings in other states. For these reasons, we conclude that the Bankruptcy Code preempts state-law claims that allow the recovery of damages for misconduct committed by a litigant during a *279 bankruptcy court proceeding. We therefore affirm the judgment of the Seventh District Court of Appeals.
Facts and Procedural History
{¶ 4} In January 2001, Creatore, William Sayavich, and David Barnitt formed a holding company called U.S. Sanitary Corporation (“USSC”) for the purpose of purchasing the stock of Girton, Oakes & Burger, Inc. (“GO & B”). At that time, GO & B was the exclusive distributor in Ohio, New York, and western Pennsylvania for Alfa Laval Flow, Inc., which manufactures equipment for sanitary processing of food and beverages.
{¶ 5} Creatore, Sayavich, and Barnitt entered into a close-corporation agreement that contained confidentiality and noncompetition provisions, and they financed the purchase of GO & B through a loan from Provident Bank. On purchasing GO & B, Creatore became its president, Barnitt its chief financial officer, and Sayavich its head of sales and marketing. However, Alfa Laval soon ended the exclusivity of GO & B’s distributorship, and GO & B responded by starting a private-label line of products that competed with the ones it distributed for Alfa Laval.
{¶ 6} By 2003, GO & B owed Alfa Laval more than $1 million, and Provident Bank threatened to foreclose on its loan. Alfa Laval presented Creatore with a plan to minimize the impact on it in the event of foreclosure, proposing to acquire GO & B’s intangible assets and to give its distributorship to a competitor. Creatore rejected this proposal and instead decided to purchase the Provident Bank loan through a company he created for that purpose, PNH, Inc.
{¶ 7} In late February and early March, Creatore terminated Barnitt and Sayavich for accounting errors in financial reports to Provident Bank, and he gave Alfa Laval notice that both were bound by the confidentiality and noncom-petition provisions of the close-corporation agreement. Nonetheless, Barnitt and Sayavich allegedly informed Alfa Laval that GO & B had established a competing line of products and that Creatore had planned to purchase the Provident Bank loan.
{¶ 8} On April 23, 2003, PNH closed on the Provident Bank loan purchase. That same day, Alfa Laval and two other GO & B creditors filed an involuntary-bankruptcy petition against GO & B in the United States Bankruptcy Court for the Northern District of Ohio, and the court appointed an interim trustee to assume control over GO & B’s management. Creatore then formed a company called Diversified Process Components, Inc., to start another product line that competed with Alfa Laval’s products.
{¶ 9} On May 29, 2003, counsel for Alfa Laval filed an adversary complaint in the bankruptcy court, naming itself and the trustee as plaintiffs and PNH, *280 Creatore, and other “Creatore shell companies” as defendants. Alfa Laval alleged that Creatore had diverted corporate assets and opportunities from GO & B and wrongfully used its confidential design specifications to start a competing enterprise manufacturing “knock-off products,” and it sought an injunction to enforce the confidentiality and noncompetition provisions of the USSC close-corporation agreement against Creatore. The trustee did not sign the adversary complaint, but later ratified it. Eventually, the trustee and Creatore reached a settlement in the adversary proceeding, which the bankruptcy court approved over Alfa Laval’s objections.
{¶ 10} On May 11, 2005, Creatore and PNH brought this action against Alfa Laval in the Mahoning County Court of Common Pleas, asserting claims for defamation, tortious interference with a contract, and abuse of process. They alleged that Alfa Laval had improperly used the adversary proceeding to eliminate Creatore and Diversified Process Components as competitors, an objective not permitted by bankruptcy law, and that Alfa Laval had wrongfully misappropriated the name, power, and authority of the trustee in the adversary proceeding.
{¶ 11} On January 7, 2008, the trial court entered summary judgment against Creatore and PNH on the defamation claim. On February 2, 2009, the court dismissed the claims of abuse of process and tortious interference with a contract for lack of jurisdiction, concluding that those causes of action had been preempted by federal bankruptcy law. The trial court subsequently denied Creatore and PNH relief from that judgment.
{¶ 12} On appeal, the Seventh District affirmed, holding that state-law claims for abuse of process and tortious interference with a contract arising during a bankruptcy proceeding were preempted by the Bankruptcy Code. 189 Ohio App.3d 704, 2010-Ohio-3280, 940 N.E.2d 577, ¶ 56. The appellate court reasoned that allowing state-law remedies for violations of federal bankruptcy procedure would undermine the uniformity of the bankruptcy process and deter parties from exercising federal rights created by the Bankruptcy Code. Id. at ¶ 46. Further, the court emphasized that bankruptcy law already provided remedies for abuse of bankruptcy proceedings, evincing the intent of Congress to preempt state-law tort claims arising from the misuse of those proceedings. Id. The appellate court therefore determined that the trial court did not err in dismissing the claims or in denying relief from that judgment. Id. at ¶ 56, 70.
{¶ 13} On appeal to this court, Creatore and PNH argue that there is a presumption that Congress has not preempted state-law causes of action, so that federal law will not preempt state law unless the intent of Congress is clear and manifest. They contend that Congress has not expressed a clear and manifest intent to occupy the field of regulation regarding abusive litigation in federal *281 bankruptcy proceedings, emphasizing that it granted state courts jurisdiction concurrent with federal courts over claims, such as theirs, that do not concern substantive or “core” matters under the Bankruptcy Code and that are only “related to” bankruptcy cases. Creatore and PNH maintain that because Fed.R.Bankr.P. 9011 and Section 105(a), Title 11, U.S.Code, import only general principles of federal civil procedure to bankruptcy proceedings, courts have held that they do not have preemptive force. Further, they note that Section 303(i)(2), Title 11, U.S.Code, which authorizes damages for bad-faith filing of an involuntary-bankruptcy petition, does not apply to their claims. Thus, Creatore and PNH maintain that because the Bankruptcy Code does not provide a complete remedy for the injuries they suffered in this case, the court should not presume that Congress displaced the remedies for that misconduct afforded by state law.
{¶ 14} Alfa Laval responds that the claims brought by Creatore and PNH are premised on allegations that it violated federal law during the GO & B bankruptcy proceedings. It relies on decisions from the Sixth and Ninth Circuit Courts of Appeals and the Supreme Court of Pennsylvania for the proposition that state-law causes of action for misconduct and improper filings in bankruptcy court proceedings are preempted by federal law, which therefore provides the only remedies available for the injuries alleged in this case.
{¶ 15} The question presented here is one of first impression for this court: whether the United States Bankruptcy Code has preempted state-law claims for abuse of process and tortious interference with a contract when the alleged misconduct occurred during a bankruptcy court proceeding.
Law and Analysis

Federal Preemption of State Law

{¶ 16} The Supremacy Clause of the United States Constitution declares that “the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” Clause 2, Article VI, United States Constitution. Since the decision in McCulloch v. Maryland (1819), 17 U.S. 316, 427, 4 Wheat. 316, 4 L.Ed. 579, the United States Supreme Court has held that state law that conflicts with federal law is “without effect.” Maryland v. Louisiana (1981), 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576.
{¶ 17} The intent of Congress to override state law may be “explicitly stated in the statute’s language.” Jones v. Rath Packing Co. (1977), 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604. However, preemption may be implied if state law actually conflicts with federal law, “if federal law so thoroughly occupies a legislative field ‘ “as to make reasonable the inference that Congress left no room for the States to supplement it,” ’” or if “ ‘the federal interest is so dominant that *282 the federal system will be assumed to preclude enforcement of state laws on the same subject.’ ” Cipollone v. Liggett Group, Inc. (1992), 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407, quoting Rice v. Santa Fe Elevator Corp. (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447; English v. Gen. Elec. Co. (1990), 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting Rice at 230.
{¶ 18} In determining whether federal law preempts state law, “ ‘[t]he purpose of Congress is the ultimate touchstone.’ ” Malone v. White Motor Corp. (1978), 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443, quoting Retail Clerks v. Schermerhorn (1963), 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179. Nonetheless, preemption analysis relies on “the assumption that the historic police powers of the States [are] not to be superseded by [federal law] unless that [is] the clear and manifest purpose of Congress.” Rice at 230. As the Supreme Court reiterated in Bates v. Dow Agrosciences, L.L.C. (2005), 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687, quoting Medtronic, Inc. v. Lohr (1996), 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700, “ ‘[b]ecause the States are independent sovereigns in our federal system, [the court has] long presumed that Congress does not cavalierly pre-empt state-law causes of action.’ ”
{¶ 19} Thus, unless Congress has manifested its intent to preempt state-law claims alleging the abuse of a bankruptcy court proceeding, “the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law.” BFP v. Resolution Trust Corp. (1994), 511 U.S. 531, 544-545, 114 S.Ct. 1757, 128 L.Ed.2d 556.

The Bankruptcy Clause and the Bankruptcy Code

{¶ 20} In addition to granting to Congress the authority to preempt state laws, the Constitution empowers Congress “[t]o establish * * * uniform Laws on the subject of Bankruptcies throughout the United States.” Clause 4, Section 8, Article I. The Supreme Court has therefore recognized that “the Bankruptcy Clause itself contains an affirmative limitation or restriction upon Congress’ power: bankruptcy laws must be uniform throughout the United States.” Ry. Labor Executives’ Assn. v. Gibbons (1982), 455 U.S. 457, 468, 102 S.Ct. 1169, 71 L.Ed.2d 335.
{¶21} Because of “the unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws,” Congress enacted the Bankruptcy Code intending to create a comprehensive, uniform statutory scheme that is under federal control. MSR Exploration, Ltd. v. Meridian Oil, Inc. (C.A.9, 1996), 74 F.3d 910, 915. For this reason, it vested federal district courts with original and exclusive jurisdiction over bankruptcy cases, including the involuntary-bankruptcy and adversary proceedings at issue in this case. Section 303, Title 11, U.S.Code; Section 1334(a), (b), and (e), Title 28, U.S.Code; Cohen v. *283 Bucci (C.A.7, 1990), 905 F.2d 1111, 1112; Glannon v. Garrett & Assoc., Inc. (D.Kan.2001), 261 B.R. 259, 264; 1 Resnick & Sommer, Collier on Bankruptcy (16th Ed.2010) 3-5, ¶ 3.01[1],
{¶ 22} Nonetheless, there is a split of authority regarding whether the Bankruptcy Code preempts state-law causes of action that allow the recovery of damages for a litigant’s abuse of a bankruptcy court proceeding.
{¶ 23} Some jurisdictions hold that these types of claims are not preempted by federal bankruptcy law. The Supreme Court of Texas recently held in Graber v. Fuqua (Tex.2009), 279 S.W.3d 608, that federal law does not preempt a state-law cause of action for malicious prosecution when a party seeks to recover for the wrongful filing of an adversary proceeding in bankruptcy court. The court recognized that the Bankruptcy Code establishes various remedies and sanctions to deter the abuse of bankruptcy proceedings. However, it distinguished between those provisions that Congress “custom-built” exclusively for bankruptcy proceedings, which manifest the intent of Congress to displace state-law claims, and those that it borrowed from the existing remedial scheme in federal civil litigation (such as sanctions under Fed.R.Civ.P. 11), which do not. Because Congress had not provided any custom-built remedies for the wrongful use of bankruptcy proceedings but had “merely imported the existing federal scheme,” the court determined that Congress had not intended to preempt the malicious-prosecution claims brought in Texas state court. Id. at 615.
{¶ 24} The Supreme Court of Texas also rejected the argument that permitting such state-law claims would disrupt the uniformity of bankruptcy law, emphasizing that an action for malicious prosecution does not affect bankruptcy court proceedings because it “arise[s] only after the underlying case reaches a final judgment.” Id. at 617. Therefore, the court concluded: “Allowing [this] claim to proceed in Texas courts neither conflicts with the federal laws that were expressed, nor does it hinder the advancement of the policies embodied therein. Because Congress was silent on the matter, we see no reason to discontinue state law’s historic function of providing common law remedies for misconduct in federal courts.” Id. at 620.
{¶ 25} Other jurisdictions have also decided that the Bankruptcy Code does not preempt state-law causes of action that provide remedies for misconduct committed in bankruptcy court proceedings. E.g., U.S. Express Lines, Ltd. v. Higgins (C.A.3, 2002), 281 F.3d 383, 393 (“Despite the broad scope of remedies available in the Code and the general exclusivity of the federal courts in bankruptcy, we have held that a state claim for malicious abuse of process was not preempted”); Shead v. Kelley (S.D.Tex.2009), Civ. No. H-08-497, 2009 WL 4730398, *1 (“A state malicious prosecution claim is not preempted by federal bankruptcy [law] just because the claim arose out of the filing of an adversary action in a *284 bankruptcy proceeding”); In re Fornaro (Bankr.D.N.J.2009), 402 B.R. 104, 110 (“The Court agrees with a recent Texas Supreme Court case decision, holding that malicious prosecution suits are not preempted, even though the claim arose in a bankruptcy action”); R.L. LaRoche, Inc. v. Barnett Bank of S. Florida, N.A. (Fla.App.1995), 661 So.2d 855 (claims of abuse of process and malicious prosecution against a creditor for the bad-faith filing of an involuntary petition are not preempted by federal bankruptcy law).
{¶ 26} In contrast, courts in other jurisdictions reason that because the uniformity of bankruptcy law is a constitutional requirement as well as a practical necessity, Congress has implicitly preempted state-law tort claims that would allow recovery for misconduct committed in bankruptcy cases. See, e.g., Pertuso v. Ford Motor Credit Co. (C.A.6, 2000), 233 F.3d 417, 426; MSR Exploration, 74 F.3d at 915; Glannon v. Garrett & Assoc., Inc. (D.Kan.2001), 261 B.R. 259, 265; Koffman v. Osteoimplant Technology, Inc. (D.Md.1995), 182 B.R. 115, 125; Lewis v. Chelsea G.C.A. Realty Partnership, L.P. (2004), 86 ConmApp. 596, 605, 862 A.2d 368; Stone Crushed Partnership v. Kassab, Archbold, Jackson & O’Brien (2006), 589 Pa. 296, 315, 908 A.2d 875.
{¶ 27} As the Sixth Circuit Court of Appeals explained in Pertuso, “[p]ermitting assertion of a host of state law causes of action to redress wrongs under the Bankruptcy Code would undermine the uniformity the Code endeavors to preserve and would ‘stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” 233 F.3d at 426, quoting Hines v. Davidowitz (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581.
{¶ 28} Further, these jurisdictions generally recognize that not only would the threat of litigation in state court potentially chill the exercise of federal rights created by the Bankruptcy Code but also that state law would define the standard of conduct for litigants in federal bankruptcy court proceedings, establishing standards that vary from state to state and disrupt the uniformity of bankruptcy law that Congress had intended to promote. MSR Exploration, 74 F.3d at 915-916; Glannon, 261 B.R. at 265; Stone Crushed Partnership, 589 Pa. at 315, 908 A.2d 875.
{¶ 29} Courts adopting this view emphasize that Congress enacted a “complex, detailed, and comprehensive” statutory scheme that provides a number of remedies designed to preclude the misuse of the bankruptcy process. MSR Exploration, 74 F.3d at 914. Those remedies include sanctions for frivolous and harassing filings, Fed.R.Bankr.P. 9011; costs or attorneys fees on the dismissal of an involuntary petition, Section 303(i)(l), Title 11, U.S.Code; compensatory and punitive damages for bad-faith filing of involuntary petitions, Section 303(i)(2), Title 11, U.S.Code; and compensatory and punitive damages for willful violation of stays, Section 362(k), Title 11, U.S.Code, as well as judicial authority *285 to prevent an abuse of process, Section 105(a), Title 11, U.S.Code. See generally Koffman, 182 B.R. at 124-125 (detailing the sanctions and remedies for misconduct provided by the Bankruptcy Code).
{¶ 30} These courts note that the existence of federal remedies demonstrates that Congress recognized the need to deter the abuse of bankruptcy proceedings and therefore did not overlook the need for additional deterrents or intend for states to supplement the federal remedies it provided. MSR Exploration, 74 F.3d at 915; Stone Crushed Partnership, 589 Pa. at 314, 908 A.2d 875. And to the extent that the Bankruptcy Code lacks a sufficient remedy for the abuse of proceedings alleged in this case, litigants must look to Congress for redress. As the federal appellate court explained in Gonzales v. Parks (C.A.9, 1987), 830 F.2d 1033, 1036, “it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized.”
{¶ 31} We adopt the reasoning of the jurisdictions that hold that the Bankruptcy Code preempts state-law causes of action for misconduct committed by litigants in bankruptcy court proceedings. Congress has established a comprehensive legislative scheme intended to promote the uniformity of bankruptcy law, which provides for federal remedies to deter the abuse of bankruptcy proceedings. Permitting additional state-law claims for misconduct occurring during a bankruptcy proceeding would, in our view, impermissibly disrupt the uniformity of bankruptcy law by establishing separate remedies for Ohio litigants in a field of law that Congress intended to occupy exclusively.
{¶ 32} For these reasons, the causes of action for abuse of process and tortious interference with a contract brought in this case are preempted by federal law because Creatore and PNH seek recovery for misconduct that they allege Alfa Laval committed during a bankruptcy court proceeding. Thus, these claims were properly dismissed by the trial court.
Conclusion
{¶ 33} The United States Bankruptcy Code preempts state-law causes of action for misconduct committed by a litigant during a bankruptcy court proceeding. Accordingly, the court of appeals properly determined that the claims asserted by Creatore and PNH for abuse of process and tortious interference with a contract allegedly committed during a bankruptcy court proceeding are precluded by federal law, and its judgment is therefore affirmed.
Judgment affirmed.
O’Connor, C.J., and Pfeifer, Lundberg Stratton, and McGee Brown, JJ., concur.
Lanzinger and Cupp, JJ., dissent.