[Cite as *Croce v. Ohio State Univ. Bd. of Trustees*, 2023-Ohio-2656.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| DR. CARLO M. CROCE<br><br>    Plaintiff<br><br>    v.<br><br>THE OHIO STATE UNIVERSITY BOARD OF TRUSTEES<br><br>    Defendant | Case No. 2022-00187JD<br><br>Judge Lisa L. Sadler<br>Magistrate Holly True Shaver<br><br><u>DECISION</u> |

{¶1} Before the Court is Defendant's motion for judgment on the pleadings, pursuant to Civ.R. 12(C). For the following reasons, Defendant's motion is GRANTED.

{¶2} Rule 12(C) of the Ohio Rules of Civil Procedure generally permits a party to move for judgment on the pleadings after the pleadings are closed. Civ.R. 12(C) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings "presents only questions of law." *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807, 742 N.E.2d 674 (10th Dist.2000). The standard for a motion for judgment on the pleadings under Civ.R. 12(C) "is similar to the standard for evaluating a Civ.R. 12(B)(6) motion to dismiss, except that Civ.R. 12(C) permits the court to consider the complaint and answer, where a Civ.R. 12(B)(6) motion limits the court's consideration to the complaint." *Daudistel v. Village of Silverton*, 1st Dist. Hamilton No. C-130661, 2014-Ohio-5731, ¶ 20.

{¶3} In construing a motion to dismiss for plaintiff's failure to state a claim for relief, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery before the court may dismiss the complaint. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975).

{¶4} When a court reviews a Civ.R. 12(C) motion, a court "is limited to only the allegations contained in the complaint and answer, and any writings properly attached to

such, and the trial court may not consider any evidentiary materials." *S.E.A. Inc. v. Dunning-Lathrop & Assocs.*, 10th Dist. Franklin Nos. 03AP-1051, 03AP-1052, 2004 Ohio App. LEXIS 3734, at *10 (Aug. 5, 2004). Under Civ.R. 12(C), a dismissal "is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. * * * Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *State ex rel. Midwest Pride IV v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Stainbrook v. Ohio Secretary of State*, 2017-Ohio-1526, 88 N.E.3d 1257, ¶ 11 (10th Dist.). Indeed, "[o]nly claims supported by factual allegations can avoid dismissal." *Id.*

{¶5} Before the Court are Plaintiff's complaint, Plaintiff's Exhibits 1 and 2 which were attached to Plaintiff's complaint, and Defendant's answer. The following facts are taken from Plaintiff's complaint, which the Court construes in Plaintiff's favor. Plaintiff is one of the top cancer research scientists in the world. Complaint, ¶ 5. In 2004, Defendant, The Ohio State University (OSU), recruited Plaintiff and offered him multiple positions within OSU. *Id.* Plaintiff remains employed by OSU Medical Center. Complaint, ¶ 1. In early March of 2017, Plaintiff was the subject of a defamatory article by the New York Times and a reporter named James Glanz. Complaint, ¶ 11. Glanz had sent a letter of inquiry to OSU in late 2016 asking for information about accusations of research misconduct being levelled against Plaintiff. Complaint, ¶ 12. Consequently, between March of 2017 and April of 2019, research misconduct proceedings were instituted based on the allegations of a few complainants. Complaint, ¶ 13. Those proceedings were subject to OSU's University Policy and Procedures Concerning Research Misconduct, now known as the OSU Research Misconduct University Policy, as well as related Faculty Rules, state law and the Ohio Constitution. Complaint, ¶ 14. Generally, Chapter 3335-5 of the OSU Board of Trustees Bylaws and Rules details the process for Faculty, Governance and Committees at OSU. Complaint, ¶ 15. Specifically, Chapter 3335-5-04, et seq., applies to the procedure for complaints of misconduct made against faculty

members. *Id.* Research misconduct proceedings are allotted one hundred twenty (120) days to complete pursuant to the applicable policy.[1] Complaint, ¶ 16. Despite this policy, the proceedings took four years to complete, concluding with the Final Report of the College of Medicine Investigation Committee Concerning Allegations of Research Misconduct ("the Final Report") dated July 22, 2021. Complaint, ¶ 17. The Final Report confirms the committee's failure to conduct the proceedings within 120 days.[2] Complaint, ¶ 18. Plaintiff alleges that as a result of the investigation, he has not received any additional consulting income since 2017. Complaint, ¶ 22. Plaintiff also alleges that as a result of a prolonged investigation, he is and was deprived of his contractual rights and vested property interest without due process in violation of the law, contrary to OSU Faculty Rules, state law and the Ohio Constitution. Complaint, ¶ 24.

{¶6} As a result of the investigation, the Final Report found that there was insufficient evidence to make any finding of research misconduct against Plaintiff. Complaint, ¶ 25. Despite this finding, Dr. Carol Bradford, Dean of the College of Medicine, issued a letter to Plaintiff which states the following:

> I received the College of Medicine Investigation Committee's final report related to the allegations of research misconduct filed against you pursuant to the Policies and Procedures Concerning Research Misconduct and Faculty Rule 3335-5-04.
>
> As outlined in the report, the College of Medicine Investigation Committee (COMIC) determined that the allegations raised did not support findings of Research Misconduct against you. Given the lack of findings of misconduct, I am dismissing these allegations as mandated by Faculty Rule 3335-5-04(F)(1)(a). However, because the COMIC found improprieties relative to the following manuscripts, you must work with the other co-authors, and copy the Office of Research Compliance, to contact the following journals * * *

---

[1] Plaintiff cites University Policy and Procedures Concerning Research Misconduct, IV Procedures, Section F.2 – Time Requirements. However, this policy is not attached to the complaint.

[2] Plaintiff cites pages 94-95 of the Final Report, but it is not attached to the complaint.

Separate and apart from the research misconduct allegations, the COMIC was very troubled by the management of your laboratory and recommended that the College take numerous non-disciplinary actions within its administrative authority to manage operations. After reviewing the COMIC Final Report, I share their concerns, and have deep reservations about your approach to your obligations as a PI. Therefore, pursuant to my oversight and authority as Dean, I am taking the following non-disciplinary administrative actions as recommended by the COMIC:

Plaintiff's Exhibit 1.

{¶7} Dr. Bradford took the following non-disciplinary actions against Plaintiff: 1) Plaintiff was removed from his discretionary Endowed Chair appointment as the John W. Wolfe Chair in Human Cancer Genetics, effective September 7, 2021; 2) Plaintiff was required to present all original data for grant applications, manuscripts or abstracts to a committee of three faculty members; 3) Plaintiff was required to develop a redundant data management plan for all visiting scholars, junior faculty, staff and students working in his laboratory; and 4) Plaintiff was required to retake CITI training responsible conduct in research coursework despite being current in the coursework. Complaint, ¶ 27; Plaintiff's Exhibit 1.

{¶8} On November 5, 2021, Plaintiff submitted a letter from his attorney, captioned as a "Request for Remediation and Reimbursement" to Dr. Grace Wang, Executive Vice President and Chancellor, Enterprise for Research, Innovation and Knowledge. Complaint, ¶ 29; Plaintiff's Exhibit 2. In the request, Plaintiff noted that although he was "completely exonerated from the false and malicious accusations of research misconduct directed at him, * * * the University has not provided any detail about the reputational and economic remediation efforts to be undertaken on [his] behalf." Plaintiff's Exhibit 2. Plaintiff cited the following language from Defendant's *University Policy and Procedures Concerning Research Misconduct, Section V., Miscellaneous Matters* in the request:

K. Rehabilitation. In any case in which a Respondent is found not to have committed research misconduct, any reference to the case shall be removed from the files of the University including the personnel file of the Respondent, except that an official file shall be kept by either the Executive

Vice President for Academic Affairs and Provost or by the Vice President for Research, as provided for in E above. The Vice President for Research or Coordinator shall be responsible for exercising reasonable efforts to accomplish such removal. ***The University shall also work with the Respondent to rectify any injury done to the reputation of Respondent, including, with the permission of Respondent, release of a press announcement of the results of the investigation. The steps to be taken to accomplish rehabilitation of the Respondent, including any requested economic rehabilitation, shall be at the discretion of the Vice President for Research.*** (Emphasis sic.) Plaintiff's Exhibit 2.

{¶9} In the letter, Plaintiff states that he "was forced to defend himself in two different lawsuits against the New York Times, James Glanz and 'Dr.' Sanders," and that he "expended significant sums of money and is requesting reimbursement for these amounts and all related expenses." *Id.* Plaintiff also stated that he was "demanding the University purchase advertising space in national publications including but not limited to the New York Times highlighting both his major scientific and medical contributions as well as the University's ultimate findings that he did not commit one single instance of research misconduct after ***four years*** of an exhaustive investigation. Additional aspects of this rehabilitative message should be jointly negotiated with Dr. Croce's approval as well as the number and identity of the other publications." (Emphasis sic.) *Id.* Plaintiff asserts that Defendant has not formally responded to the request, and that the failure to respond is a violation of law, contrary to OSU Faculty rules*,* and the Ohio Constitution. Complaint, ¶ 31. Plaintiff further alleges that Defendant violated the University Policy and Procedures Concerning Research Misconduct because certain members of the committee that investigated him had conflicts of interest and failed to disclose them pursuant to the applicable policies. Complaint, ¶ 33-42. Plaintiff also alleges that a "consultant" with a conflict of interest acted with malice and ill will toward Plaintiff during the investigation, and that the committee deprived Plaintiff of his contractual rights and vested property interest without due process in violation of OSU Faculty Rules, state law, and the Ohio Constitution. Complaint, ¶ 43-47. Plaintiff also asserts that when Dr. Bradford removed him from the Wolfe Chair, his removal was not done in accordance

with OSU's Faculty Rules, state law and the Ohio Constitution. Complaint, ¶ 48-52. Plaintiff seeks reinstatement to the Wolfe Chair, damages, a neutral review of the entire process, and a declaration that Defendant violated OSU Faculty Rules, state law, and the Ohio Constitution. Complaint, ¶ 55. Plaintiff also seeks an award of punitive damages. Complaint ¶ 56. Plaintiff asserts three causes of action: 1) Breach of Contract; 2) Violation of Constitutional Rights; and 3) Declaratory Judgment and Injunctive Relief regarding Plaintiff's Wolfe Chair position. Complaint, ¶ 57-72. Plaintiff also seeks costs, attorney fees, reinstatement to the Wolfe Chair, and an order compelling OSU to advertise in national media outlets equivalent to the New York Times that he was exonerated from all of the research misconduct allegations. Complaint, p. 13-14.

{¶10} Initially, Plaintiff is not entitled to punitive damages in the Court of Claims. *See Drain v. Kosydar*, 54 Ohio St.2d 49 (1978). Therefore, Plaintiff's claim for punitive damages is STRICKEN from his complaint.

### Count I: Breach of Contract

{¶11} To recover for a breach of contract, Plaintiff must show the "(1) existence of a valid contract, (2) performance by the plaintiff, (3) non-performance by the defendant, and (4) damages resulting from the defendant's breach." *Yoder v. Hurst*, 10th Dist. Franklin No. 07AP-21, 2007-Ohio-4861, ¶ 27. Initially, the Court notes that although Plaintiff is currently employed by Defendant, Plaintiff has failed to attach a copy of his employment contract to the complaint or state the reason why it was not attached to the complaint as required by Civ.R. 10(D)(1). The letter that Plaintiff did attach to his complaint refers to Section K of the *University Policy and Procedures Concerning Research Misconduct, Section V., Miscellaneous Matters*, which discusses the discretionary steps to be taken by the Vice President for Research to rectify any injury done to Plaintiff's reputation as a result of the investigation, including release of a press announcement of the results of the investigation and any requested economic rehabilitation. Plaintiff's Exhibit 2. Therefore, assuming for purposes of argument that this section of the University Policy and Procedures constitutes the existence of a valid contract, the Court notes that Plaintiff's allegations in his complaint that he received no consulting income since 2017 fails to state a claim for breach of contract, because

consulting income is not addressed in the policy, and Plaintiff has failed to allege that he was entitled to any consulting income from Defendant pursuant to the contract. The Court now turns to Defendant's arguments raised in its motion.

*Public Duty Rule*

{¶12} Defendant argues that Plaintiff's breach of contract claims are barred by the public duty rule. The state is "immune from liability in any civil action or proceeding involving the performance or nonperformance of a public duty." R.C. 2743.02(A)(3)(a). "'Public duty' includes, but is not limited to, any statutory, regulatory, or assumed duty concerning any action or omission of the state involving any of the following: [p]ermitting, certifying, licensing, inspecting, investigating, supervising, regulating, auditing, monitoring, law enforcement, emergency response activity, or compromising claims." R.C. 2743.01(E)(1)(a). When looking at a complaint, "[t]he essential nature of the substantive allegations of the plaintiff's claim, not the artificial label attached to the claim, determines the claim's true nature." *Volovetz v. Tremco Barrier Sols., Inc.*, 2016-Ohio-7707, 74 N.E.3d 743, ¶ 33 (10th Dist.). Defendant asserts that because Plaintiff was subject to an investigation of research misconduct, it is immune from liability regarding any action taken during that investigation.

{¶13} However, state immunity "does not apply to any action of the state under circumstances in which a special relationship can be established between the state and an injured party." R.C. 2743.02(A)(3)(b). A special relationship requires: "[a]n assumption by the state, by means of promises or actions, of an affirmative duty to act on behalf of the party who was allegedly injured; [k]nowledge on the part of the state's agents that inaction of the state could lead to harm; [s]ome form of direct contact between the state's agents and the injured party; and [t]he injured party's justifiable reliance on the state's affirmative undertaking." R.C. 2743.02(A)(3)(b)(i)-(iv).

{¶14} Making all reasonable inferences in Plaintiff's favor, it does not appear beyond doubt that Plaintiff's claims are barred by the public duty rule. Plaintiff has shown that he has an employment relationship with Defendant and that Defendant's policies and procedures govern the investigation of research misconduct. Therefore, Defendant's argument about the public duty rule barring Plaintiff's claims is not well-taken.

*Federal Preemption*

**{¶15}** Defendant further asserts that Plaintiff's claims are either preempted by federal law governing research misconduct or outside the scope of this Court's limited subject matter jurisdiction. Defendant explains that in 1993, Congress established the Office of Research Integrity (ORI) within the Department of Health and Human Services (HHS) and tasked the agency with overseeing and monitoring research misconduct at research institutions that receive federal funds. 42 U.S.C. §289b. Specifically, Congress charged ORI with promulgating a comprehensive set of federal rules defining research misconduct, establishing a set of policies and procedures for reviewing, investigating, and reporting research misconduct, and providing the agency with oversight powers. See, 42 U.S.C. §289b(a)-(e). Partner institutions, such as OSU, have the "primary responsibility for responding to and reporting allegations of research misconduct." 42 C.F.R. 93.100(b). Defendant states that as a partner institution with certain responsibilities under the federal scheme, OSU is required to comply with ORI's rules governing research misconduct. Specifically, OSU is required to cooperate with the federal government during research misconduct proceedings, to put in place federally compliant research misconduct policies and procedures, to timely and thoroughly investigate credible allegations of research misconduct, and to request additional time from ORI, when needed, to fully investigate credible allegations. See, 42 C.F.R. 93.300(g)-93.311(b). ORI has the power to ensure that OSU complies with the federal requirements. See, 42 C.F.R. 93.400-413.

**{¶16}** OSU instituted research misconduct proceedings against Plaintiff between March 2017 and April 2019. Complaint, ¶ 13; Answer, ¶ 13. The research misconduct proceedings were subject to OSU's federally compliant policies and procedures concerning research misconduct. Complaint, ¶ 14-18; Answer, ¶ 14-18. OSU's investigation ultimately concluded with the issuance of a final report that found that Plaintiff did not commit research misconduct as that term is defined in 42 C.F.R. 93.103. Complaint, ¶ 17-18; Plaintiff's Exhibit 1.

*Plaintiff's Criticisms of How Investigation Was Handled*

{¶17} Defendant argues that any claims that Plaintiff has about the investigation and the subsequent actions taken by OSU are either "field preempted" or "conflict preempted" by federal law. Defendant asserts that state-law claims are impliedly preempted whenever Congress enacts a regulatory scheme so pervasive that it occupies an entire field of law, leaving no room for supplementation (known as "field preemption"), or whenever there is an actual conflict between the requirements or objectives of the federal scheme and the state-law cause of action (known as "conflict preemption"). *PNH, Inc., v. Alfa Laval Flow, Inc.,* 130 Ohio St.3d 278, 2011-Ohio-4398, 958 N.E.2d 120, 16-17.

{¶18} Defendant argues that in essence, Plaintiff's breach of contract claims are really just an impermissible attempt to create a private right of action to enforce Plaintiff's view of compliance with the federal scheme. Defendant argues that Congress did not see fit to give individual plaintiffs a private right of action in the context of research misconduct. Instead, Congress empowered ORI exclusively to police and punish noncompliance with the federal scheme. 42 U.S.C. 289b. Furthermore, because Plaintiff was found not to have committed research misconduct, he is not entitled to further review in any forum: state, federal, administrative or judicial. See, 42 C.F.R. 93.501(a) (providing respondents with a procedure to contest findings of research misconduct.)

{¶19} In response, Plaintiff argues that his breach of contract claims survive a motion to dismiss because they directly question the conduct taken during the research misconduct proceedings instituted against him, and that his claims about the length of the proceedings and failure to follow the applicable conflict of interest policies constitute a breach of OSU's Research Misconduct Policy, Faculty Rules, and state law, not federal law.

{¶20} Making all reasonable inferences in Plaintiff's favor, his criticisms of the length of time the investigation took, the alleged conflicts of interest that were present during the investigation, and his general complaints about the investigation process are all governed by federal statutes. Any allegations regarding the research misconduct investigation are preempted by federal law as cited above, because Congress has established a comprehensive legislative scheme intended to promote the uniformity of research misconduct proceedings by universities using federal funds. See, PNH, Inc., v.

Alfa Laval Flow, Inc., 130 Ohio St.3d 278, 2011-Ohio-4398, 958 N.E.2d 120, ¶ 31 ("Permitting additional state-law claims for misconduct occurring during a bankruptcy proceeding would, in our view, impermissibly disrupt the uniformity of bankruptcy law by establishing separate remedies for Ohio litigants in a field of law that Congress intended to occupy exclusively.")  Therefore, Plaintiff has failed to state a claim for relief under a breach of contract theory regarding his criticisms of how the research misconduct proceedings were handled, because those issues are preempted by federal law.

   *Discretion Argument*

   {¶21} Lastly, Defendant argues that it did not commit a breach of contract as a matter of law.  Plaintiff alleges that Defendant committed a breach of contract when it failed to respond to his letter demanding that Defendant work with him to rectify injury to his reputation, reimburse him for his legal expenses, and provide him with economic rehabilitation pursuant to Defendant's *University Policy and Procedures Concerning Research Misconduct.*  Plaintiff further argues that Defendant breached his contract when he was removed from his discretionary Endowed Chair appointment as the John W. Wolfe Chair in Human Cancer Genetics, effective September 7, 2021; when he was required to present all original data for grant applications, manuscripts or abstracts to a committee of three faculty members; when he was was required to develop a data management plan for all visiting scholars, junior faculty, staff and students working in his laboratory; and when he was required to retake CITI training responsible conduct in research coursework despite being current in the coursework.  However, pursuant to 42 C.F.R. 93.319, an institution like The Ohio State University, can decide internally to take action to ensure lab standards are complied with, even if an employee's conduct does not meet the definition of research misconduct under the federal scheme.[3]  Thus, the non-disciplinary actions that OSU took against plaintiff that are reflected in Plaintiff's Exhibit 1 show that

---

[3] "(a) Institutions may have internal standards of conduct different from the HHS standards for research misconduct under this part. Therefore, an institution may find conduct to be actionable under its standards even if the action does not meet this part's definition of research misconduct.
    (b) An HHS finding or settlement does not affect institutional findings or administrative actions based on an institution's internal standards of conduct."  42 C.F.R. 93.319.

despite no finding of research misconduct, OSU was authorized to take the non-disciplinary actions against Plaintiff pursuant to federal law.

{¶22} Plaintiff complains that he was wrongfully removed from his discretionary Endowed Chair appointment as the John W. Wolfe Chair in Human Cancer Genetics, and he seeks reinstatement to his appointment and a neutral review of the entire process. However, Plaintiff has cited no contractual provision that would entitle him to reinstatement or that would allow this court to review the process of his removal. Indeed, the actions that OSU took after the investigation are at the sole discretion of OSU. See, Plaintiff's Exhibit 2 ("The steps taken to accomplish rehabilitation of the Respondent, including any requested economic rehabilitation, shall be at the discretion of the Vice President of Research.") Defendant argues that the policy language that Plaintiff relies on to support a breach of contract claim specifically states that the steps that Defendant must take to rehabilitate plaintiff's reputation and provide any economic rehabilitation are discretionary on their face, and, as such, Plaintiff cannot rely on that policy to state a claim for breach of contract.

{¶23} Where the parties' contract confers discretion on one party, that party does not breach the agreement by merely exercising its contractually conferred discretion. *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.2d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 43. Even making all reasonable inferences in Plaintiff's favor, the actions that Defendant took at the conclusion of the investigation were at its discretion, as stated in Section K of the policy. Plaintiff has not alleged facts that would give rise to a breach of contract claim as a matter of law. Accordingly, Defendant's motion for judgment on the pleadings as to Count I of Plaintiff's complaint is GRANTED.

**Count II: "Ohio Constitution"**

{¶24} Defendant also argues that this Court lacks jurisdiction over Plaintiff's constitutional claims. The Court agrees.

{¶25} It has been consistently held that this Court is without jurisdiction to consider claims for relief premised upon alleged violations of either the Ohio or United States Constitution. *Savoy v. Univ. of Akron*, 10th Dist. Franklin No. 13AP-696, 2014-Ohio-3043, ¶ 11; *Guillory v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 07AP-861, 2008-

Ohio-2299, ¶ 12, citing *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 604 N.E.2d 783 (10th Dist.1992). Inasmuch as this Court is without jurisdiction to consider claims for relief premised upon alleged violations of the United States Constitution or the Ohio Constitution, Count II of Plaintiff's complaint must be dismissed for lack of jurisdiction.

### Count III: Declaratory Judgment

{¶26} In Count III of Plaintiff's complaint, he seeks a declaration that Defendant must fully comply with the OSU Faculty Rules, state law, and the Ohio Constitution, and an order to not remove him as Wolfe Chair unless and until Defendant complies with the forementioned rules and law. However, this claim is asserted within the context of Count I of the complaint, for breach of contract, and essentially is subsumed into Plaintiff's breach of contract claim. *See Ambulatory Care Affiliates, Ltd. v. OhioHealth Corp.*, 10th Dist. Franklin No. 10AP-30, 2010-Ohio-3035, ¶ 10 (actions for declaratory judgment are special proceedings but when a declaratory judgment claim is asserted within the context of an ordinary civil action for breach of contract, the underlying action governs a court's analysis). Making all reasonable inferences in Plaintiff's favor, inasmuch as Plaintiff has failed to state a claim for breach of contract in Count I of his complaint, the allegations in Count III of his complaint fail as well.

### Conclusion

{¶27} Based on the foregoing, Defendant's motion for judgment on the pleadings is GRANTED.

LISA L. SADLER
Judge

[Cite as *Croce v. Ohio State Univ. Bd. of Trustees*, 2023-Ohio-2656.]

| DR. CARLO M. CROCE | Case No. 2022-00187JD |
|---|---|
| Plaintiff | Judge Lisa L. Sadler<br>Magistrate Holly True Shaver |
| v. | |
| THE OHIO STATE UNIVERSITY BOARD OF TRUSTEES | <u>JUDGMENT ENTRY</u> |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶28} For the reasons set forth in the decision filed concurrently herewith, Defendant's motion for judgment on the pleadings is GRANTED, and Plaintiff's complaint is DISMISSED. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

Filed June 9, 2023
Sent to S.C. Reporter 7/31/23